[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Griffin v. Sehlmeyer*, Slip Opinion No. 2021-Ohio-1419.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1419

[THE STATE EX REL.] GRIFFIN *v.* SEHLMEYER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Griffin v. Sehlmeyer*, Slip Opinion No. 2021-Ohio-1419.]**

*Public records—R.C. 149.43—Mandamus—A public-records custodian has a clear legal duty to identify the records that are responsive to a public-records request and to offer to provide them to the requester at cost—Writ granted.*

(No. 2020-0748—Submitted January 26, 2021—Decided April 27, 2021.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In April 2020, relator, Mark Griffin Sr., an inmate at the Toledo Correctional Institution ("TCI"), requested information about the number of staff and inmates in TCI who had been exposed to or who had contracted COVID-19. His request was poorly worded—although he invoked Ohio's Public Records Act, he did not expressly ask for any records. Respondent, Sonrisa Sehlmeyer, the

public-records custodian at TCI, responded to Griffin and wrote that he had not made a proper public-records request because he had asked for information, not records. Nevertheless, Sehlmeyer offered to provide a record containing information about staff and inmate COVID-19 testing, if Griffin paid ten cents for a copy of the two-page document. Griffin did not pay the ten cents or say that he wanted that document.

{¶ 2} One week later, Griffin made another request, this time clearly asking for records of prison staff and inmates who had contracted COVID-19. In response, Sehlmeyer stated that the prison had "no public record responsive to [this] request." Griffin now seeks a writ of mandamus to compel the production of the public records he requested. He also asks for an award of statutory damages.

{¶ 3} We grant the writ and award Griffin statutory damages in the amount of $1,000.

**Background**

{¶ 4} On April 21, 2020, Griffin sent the following request to Sehlmeyer by prison kite:

> pursaunt to the ohio public records act 149. 43 b im seeking the actual number of [TCI] staff and inmates that have been exposed to COVID 19. here at [TCI]. please remeber that this is public information according to the C. D. C. and ODRC has in ongoing statutory duty. and obligation to report all persons that have contracted COVID 19 here at [TCI]. please forward me these findings A.S. A. P ……….

Sehlmeyer determined that Griffin was requesting information, not records. She responded to Griffin on April 22, stating:

2

Mr. Griffin, Your request is seeking information. This is not a proper public record request. If you are requesting the daily status sheet on staff and inmate testing within the department, that is available and is 2 pages. Please send a cash slip for 10 cents. Ms. Sehlmeyer.

{¶ 5} On April 23, Griffin sent Sehlmeyer another kite, stating:

to . wardes assistant.. im responding to your response to my public records request.. its funny how you attempted to tell me abuot COVID 19 TESTING of inmates and staff . well i hvae a serious lung disease SARCOIDOSIS and i benn requesting to take covid 19 . test and have been refused and have not been seen by midical knowing im on the chronic care list………but accordind to your response [TCI] AND ODCR is offering tsest. wow.

(Capitalization sic.)

{¶ 6} Sehlmeyer responded to that kite the same day, explaining:

I am not sure what you are referring to. You asked for information and I told you what was available as a public record. The department has been doing tests, the offenders at Marion [Correctional Institution] and [Pickaway Correctional Institution] are all being tested because they live in a dormitory status. If you have a medical condition, have symptoms to be tested, you can reach out to medical. There is a screening form to determine who can be tested. As you are aware copays are waived during this time. Ms. Sehlmeyer.

{¶ 7} Griffin sent Sehlmeyer a third kite on April 28:

im forwarding this public records request to obtain the documented records of STAFF.. AND INMATES.. that have contracted the COVID 19..disease here at [TCI] again this is public records according to the CDC and the OHIO PUBLIC HEALTH DIRECTOR.. moreover

(Capitalization sic.)

{¶ 8} Sehlmeyer responded to Griffin's third kite on April 28:

Mr. Griffin, we have no public record responsive to your request. Ms. Sehlmeyer, CWA2.

{¶ 9} In his complaint, Griffin asks this court to issue a writ of mandamus to compel Sehlmeyer to provide records that are responsive to his April 28 kite. We issued an alternative writ and ordered the parties to submit evidence and file briefs. 160 Ohio St.3d 1403, 2020-Ohio-4458, 153 N.E.3d 98.

**Analysis**

*The public-records request*

{¶ 10} R.C. 149.43(B)(1) requires a public-records custodian to provide a copy of a public record to a requester "at cost and within a reasonable period of time." A person who is denied access to a public record may seek to compel its production through a mandamus action. R.C. 149.43(C)(1)(b). To prevail on such a claim, the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it. *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty.*

*Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 22-24; *State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 19.

{¶ 11} Although Griffin's complaint seeks to compel compliance with the request he made on April 28, the parties' arguments focus mainly on their April 21 and 22 correspondence. The question regarding Griffin's April 21 kite to Sehlmeyer is whether it actually constituted a public-records request under Ohio's Public Records Act.

{¶ 12} "Requests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30. It was reasonable for Sehlmeyer to conclude that Griffin's April 21 request was not proper under Ohio's Public Records Act. Although Griffin referred to R.C. 149.43 in his April 21 kite, he asked for only data and information—i.e., "the actual number" of staff and inmates who had been exposed to COVID-19 and "information" and "findings" about who had contracted the virus. Griffin did not ask for records on April 21.

{¶ 13} Sehlmeyer argues that on April 22, when she offered Griffin a copy of DRC's daily status sheet on staff and inmate testing for COVID-19, she complied with any obligations she had under the Public Records Act. Sehlmeyer's view is understandable from her perspective, because as she explains in her brief, the daily status sheet would have given Griffin then-current information on the number of inmates and staff who had tested positive for COVID-19 at each prison. But Sehlmeyer did not explain the contents of the daily status sheet when she communicated with Griffin in April 2020, and Griffin's subsequent correspondence suggests that he did not understand that the daily status sheet reported the information he had requested.

{¶ 14} Sehlmeyer nevertheless argues that her offer, and Griffin's failure to accept it, renders this case moot. It is true that a public-records mandamus claim usually becomes moot when the public office provides the requested documents. *See State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 22. And because Sehlmeyer submitted a copy of that document as evidence in this case, Griffin now has a copy of the April 21 daily status sheet. But the production of the April 21 daily status sheet does not resolve the parties' disagreement about their April 28 correspondence. Sehlmeyer's mootness argument, therefore, is misplaced.

{¶ 15} We must determine whether Griffin has a clear legal right to records—and whether Sehlmeyer has a corresponding clear legal duty provide them—in response to Griffin's April 28 request. The parties have very different views about what Griffin meant on April 28 when he wrote that he was "forwarding this public records request to obtain the documented records of STAFF.. AND INMATES.. that have contracted the COVID 19..disease here at [TCI]." (Capitalization sic.) Griffin contends that it was a request for public records reporting the number of staff and inmates at TCI who had tested positive for COVID-19. But Sehlmeyer argues that it represented his rejection of her offer to provide a copy of the April 21 daily status sheet and a "reiterat[ion]" of his earlier request. She contends that to the extent Griffin was seeking additional records, he was asking for the medical records of staff and inmates, which are not public records. *See* R.C. 149.43(A)(1)(a).

{¶ 16} Griffin's April 28 message to Sehlmeyer must be read in the context of their other recent communications. *See Morgan*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, at ¶ 33. One week earlier, Sehlmeyer had surmised that the information in the daily status sheet was what Griffin was looking for. When Griffin communicated with Sehlmeyer on April 28, he rephrased his earlier request and expressly asked for records about staff and inmates at TCI who had contracted

COVID-19. It was unreasonable for Sehlmeyer to construe Griffin's message simply as a rejection of her previous offer or as another request for only nonpublic medical records. In context, it appears that Griffin was trying again to get information about the number of staff and inmates who had tested positive for COVID-19. Griffin has a clear legal right to records that are responsive to that request.

{¶ 17} The question then, is whether Sehlmeyer has a clear legal duty to provide them to Griffin. Sehlmeyer contends that she satisfied her obligations because Griffin rejected her offer to provide him with a copy of the daily status sheet at cost. But Sehlmeyer's suggestion that she offered to provide records in response to Griffin's April 28 kite is hard to square with her actual response on April 28, which stated without qualification that TCI had "no public record responsive to [his] request." Sehlmeyer also fails to account for the fact that because she never fully explained what information the daily status sheet contains, a reasonable person might not have understood that the daily status sheet was a responsive document.

{¶ 18} Sehlmeyer seems to recognize these problems. First, in her affidavit and brief, she incorrectly claims that she told Griffin in her April 28 response that "no other records exist." Indeed, such a response would have pointed back to her original offer to provide the daily status sheet and also would have indicated to Griffin that a then-current version of DRC's daily status sheet would have been responsive to his April 28 request. But Sehlmeyer did not actually say that no *other* records exist; she simply said that TCI did not have any responsive records. And second, instead of simply relying on her offer to provide DRC's daily status sheet, she now describes the contents of the daily status sheet and provides a copy to show that it was responsive.

{¶ 19} We hold that Sehlmeyer has a clear legal duty to identify the records that are responsive to Griffin's request and offer to provide them to Griffin at cost.

In so holding, we note that Griffin is entitled only to records that existed on or before April 28. *See State ex rel. Taxpayers Coalition v. Lakewood*, 86 Ohio St.3d 385, 392, 715 N.E.2d 179 (1999).

*Statutory damages*

{¶ 20} Under R.C. 149.43(C)(2), if a public-records custodian fails to comply with an obligation under R.C. 149.43(B) and the requester transmitted the public-records request by hand delivery, electronic submission, or certified mail, the requester may be entitled to recover an award of statutory damages. Griffin transmitted his request by prison kite.

{¶ 21} We recently held that "delivery of a public-records request through a prison's kite system does not qualify a requester for an award of statutory damages under R.C. 149.43(C)(2)." *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 18. But based on the evidence presented in this case, we limit our holding in *McDougald*. In *McDougald*, the inmate argued that his kite constituted hand delivery under R.C. 149.43(C)(2). *Id.* at ¶ 15. We rejected that argument because evidence showed that the prison at issue used a kite system akin to regular U.S. mail delivery, with inmates writing information on a form and placing that form in a drop box. *Id.* at ¶ 16-18. The evidence in this case shows that Griffin used "JPay," a different system that allowed him to transmit his kite electronically. We hold that Griffin made his request by electronic submission and satisfied the transmission requirement under R.C. 149.43(C)(2).

{¶ 22} Griffin, therefore, is substantively and procedurally eligible for an award of statutory damages. The purpose of awarding statutory damages is to provide "compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed." R.C. 149.43(C)(2). Damages accrue at the rate of $100 for each business day the public-records custodian fails to comply with an obligation under R.C. 149.43(B), starting from

the date of the filing of a mandamus complaint, with a maximum award of $1,000. R.C. 149.43(C)(2). Because Griffin filed his complaint in June 2020 and Sehlmeyer still has not properly responded to his April 28 request, Griffin is entitled to the statutory maximum amount of $1,000.

{¶ 23} We may reduce or decline to award statutory damages if "a well-informed * * * person responsible for the requested public records reasonably would believe that" Sehlmeyer's conduct "did not constitute a failure to comply * * * with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and "a well-informed * * * person responsible for the requested public records reasonably would believe that" Sehlmeyer's conduct "would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b). For the reasons discussed above, these factors do not apply here. We therefore award Griffin statutory damages in the amount of $1,000.

*Griffin's motion*

{¶ 24} After the parties had filed their briefs, Griffin filed a motion asking this court to order Sehlmeyer to produce a 56-page document that another prison official has not provided to Griffin. Griffin argues that the document is evidence supporting his claim in this case. We deny Griffin's motion because it seeks relief that is beyond the scope of this case.

**Conclusion**

{¶ 25} We grant the writ of mandamus and order Sehlmeyer to identify all public records responsive to Griffin's April 28 request, inform Griffin of the cost of obtaining copies of those records, and provide copies of the records to Griffin upon his payment of the cost of the copies. We also award Griffin statutory damages in the amount of $1,000.

Writ granted.

KENNEDY, DONNELLY, STEWART, and BRUNNER, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion joined by FISCHER and DEWINE, JJ.

———————————

**O'CONNOR, C.J., dissenting.**

{¶ 26} In granting relator, Mark Griffin Sr., an inmate at the Toledo Correctional Institution ("TCI"), a writ of mandamus, the majority orders respondent, Sonrisa Sehlmeyer, the public-records custodian at TCI, "to identify all public records responsive to Griffin's April 28 request, inform Griffin of the cost of obtaining copies of those records, and provide copies of the records to Griffin upon his payment of the cost of the copies." Majority opinion at ¶ 25. Because Sehlmeyer has already identified the records that are responsive to Griffin's public-records request and has also informed Griffin how much copies of those records would cost, I dissent. For the same reasons, I also dissent from this court's decision to award Griffin statutory damages.

{¶ 27} The majority properly states that Griffin's April 28, 2020 public-records request must be read in context with the prior communications between Griffin and Sehlmeyer, including Griffin's April 21, 2020 public-records request. But the majority then disregards the context of those communications by viewing Griffin's April 28 request—and Sehlmeyer's response to it—in isolation. In Sehlmeyer's response to Griffin's April 21 request, she clearly stated that the daily status sheet on Ohio Department of Rehabilitation and Correction ("DRC") staff and inmate COVID-19 testing was available, that it was two pages, and that it would cost Griffin ten cents for a copy. And in Sehlmeyer's response to Griffin's April 23 message, she informed Griffin that DRC's daily status sheets were public records containing information that was responsive to his April 21 request. Neither of Griffin's communications subsequent to his April 21 request, including the April 28 request, asked for the daily status sheet, and Griffin never included a payment slip for a copy of that sheet. Nonetheless, the majority holds that Sehlmeyer has a

"clear legal duty to identify the records that are responsive to Griffin's request and offer to provide them to Griffin at cost." Majority opinion at ¶ 19. It appears, then, that this court is simply ordering Sehlmeyer to do what she has already done.

{¶ 28} To the extent that Griffin's request was unclear, R.C. 149.43(B)(2) provides guidance. It states:

> If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by *informing the requester of the manner in which records are maintained by the public office* and accessed in the ordinary course of the public office's or person's duties.

(Emphasis added.)

{¶ 29} Based on this language, Sehlmeyer complied with her duty when she identified DRC's daily status sheet in her response to Griffin's April 21 request and when she reiterated that information in her response to Griffin's subsequent kites. But the majority states that Sehlmeyer should have "fully explained what information the daily status sheet contains," majority opinion at ¶ 17, such that a reasonable person could understand that the daily status sheet was a responsive document. This is not the public-records-mandamus standard that is articulated in Ohio's Public Records Act or in case law interpreting that act. Yet, this court applies this new standard to determine that Sehlmeyer failed to comply with her

obligation under R.C. 149.43(B) and that Griffin is therefore entitled to an award of statutory damages.

**{¶ 30}** Griffin is no stranger to public-records requests or to the legal proceedings that are used to compel compliance with Ohio's Public Records Act. Since 2016, Griffin has filed six other mandamus actions in this court to compel the production of public records. *See* case Nos. 2016-1693, 2016-1717, 2017-0350, 2019-1179, 2020-1447, and 2020-1573. In my view, this court's decision will reward makers of confusing public-records requests and encourage gamesmanship, particularly given the unwarranted award of statutory damages in this case.

**{¶ 31}** For the foregoing reasons, I would deny Griffin a writ of mandamus and his request for an award of statutory damages.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

Mark Griffin Sr., pro se.

Dave Yost, Attorney General, and Jared S. Yee, Assistant Attorney General, for respondent.

_____