[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Howard v. Watson*, Slip Opinion No. 2023-Ohio-3399.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3399

THE STATE EX REL. HOWARD *v*. WATSON, WARDEN, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Howard v. Watson*, Slip Opinion No. 2023-Ohio-3399.]

*Mandamus—Public-records requests—R.C. 149.43—Inmate failed to create a genuine issue of fact as to whether additional records were responsive to his public-records request—Inmate demonstrated by clear and convincing evidence that he has clear legal right of access to requested records and that person responsible for public records has clear legal duty to provide access—Persons responsible for public records failed to meet their obligations with respect to three public-records requests, and inmate entitled to maximum damage award for each request—Writ granted in part and denied in part and $3,000 in statutory damages awarded.*

(No. 2022-1154—Submitted July 18, 2023—Decided September 27, 2023.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Jeffery L. Howard, filed this action for a writ of mandamus to order respondents, Tom Watson, Lorri Shuler, David Catanese, and Dawn Lykins, to produce records in response to several public-records requests. Watson is the warden at North Central Correctional Complex ("NCCC"), where Howard was previously incarcerated;[1] Shuler was an institutional inspector, Catanese was a warden's assistant, and Lykins was a public-information officer. Howard also seeks statutory damages for respondents' failure to timely respond to his public-records requests. We grant the writ in part and award $3,000 in statutory damages to Howard.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Howard's Public-Records Requests

{¶ 2} Howard is currently incarcerated at the Mansfield Correctional Institution. He was previously an inmate at NCCC. This case arises from four public-records requests in which Howard sought documents related to his incarceration at NCCC.

{¶ 3} On April 28, 2020, Howard sent a public-records request to Turner through the prison's electronic "JPay" kite system. Howard requested the following records:

> 1) a copy of the contract, any notes, correspondence memorandum, or other record(s) that pertains to the negotiation between respondent (warden) and the cable television provider who provides the present cable services;

---

1. Howard filed this case against Neil Turner, who was the warden at NCCC when Howard was incarcerated there. Watson is the current warden at NCCC and is automatically substituted as a respondent under S.Ct.Prac.R. 4.06(B).

2) a copy of the disbursements from the [i]ndustrial & entertainment (I&E) fund made by the NCCI/MTC[2] librarian;

3) a copy of the disbursements from the [I&E] fund made for the 2018 and 2019 Thanksgiving and Christmas meals served at [NCCC]/MTC;

4) a copy of the channels available from the present cable television provider;

5) a copy of the contract, any notes, correspondence, memorandum, or other record(s) that pertains to the negotiation between the 2017 cable television provider at [NCCC]/MTC, [including] the channels that were available.

Approximately an hour after Howard submitted the request, Shuler replied to Howard's kite. Her response stated,

> [Y]ou have requested these in the past and you have been advised multiple times that you are not entitled to copies of these forms, they are hanging in the dorms for ALL inmates to read. There is no AR or policy that states any inmate is entitled to copies of all the memos hanging in the dorms or the library.

(Capitalization sic.)

{¶ 4} Later on April 28, 2020, Howard sent a separate public-records request to Shuler by electronic kite, requesting copies of two kites identified as NCCI0420003238 created on April 28, 2020, and NCCI0420000129 created on April 4, 2020. NCCI0420003238 was the kite in which Howard sent his first April

---

2. MTC is Management & Training Corporation, which operates NCCC.

3

28 public-records request; NCCI0420000129 was an earlier public-records request that is not at issue in this case. A short time later, Shuler replied to Howard's kite, stating, "I will follow up with Columbus about you receiving copies of your kites [but] there is no reason for copies due to the fact that they are a permanent documentation on the kiosk machine. This office will be in touch with you and let you know."

{¶ 5} On July 25, 2020, Howard sent another public-records request to Turner by electronic kite. Howard requested the following records:

> 1) If the meal served on July 20, 2020 was from the [I&E] fund, provide documentation of what purchases [were] made from the [I&E] fund for the meal * * * served to the prisoners on July 20, 2020.
> 2) Provide documentation of the cost of the present cable installation and channels in 2017/2018.
> 3) Provide documentation of source of funds [that] paid for the new sinks installed in Morro A/B [at] the end of June 2020, early July 2020.
> 4) If the [I&E] fund was used to purchase the recent power Breeze fans, provide documentation.

Catanese responded on July 31, 2020, and said the request "[was] being reviewed and [would] require additional time for a response."

{¶ 6} Finally, on August 21, 2022, Howard sent a public-records request by electronic kite, directing the request to Lykins. In this request, Howard asked Lykins to:

4

1) Provide a copy of the document that authorizes Shelley Curry to conduct the 04/15/2021 security review, involving [Howard], after writing the conduct report NCCI-21-002555, on 03/28/2021.[3]

2) Provide a copy of the "camera footage (or photographs from the camera footage) provided and completed investigation by unit," that the Rules Infraction Board-RIB used in CASE NO. NCCI-21-002555 on 04/08/2021.

3) Provide a copy of the "theft Loss" report in relation to the destruction of my property while in Marion C/D dorm, completed by the 2nd/3rd shift C/O Miller and Gibson on 03/25-26/2021, approximately 6pm.  See NCCI 0421003858, 4/25/2021 sent to Lt. [A]kers, and NCCI 0421002751, 4/18/2021 sent to Ms. S. Curry.

4) provide a copy of the informal complaints allegedly forged by [Howard] in NCCI-16-012941, written by B. Keller.

5) Provide a copy of the document(s) verifying the name [of MTC's] statutory agent in the State of [O]hio.

6) provide a copy of the documents/records that give authority to [NCCC] mail room staff, and Lorri Shuler-Inspector, to prohibit prisoners from discussing legal issues in personal correspondence between prisoners.

7) Provide a copy of the records/documents with the reason(s) for denying [Howard] the move to Crawford A/B dorm for more than a year (June 2019-Sept. 2020).

{¶ 7} On August 24, 2022, Shuler responded to Howard, stating that Howard was not permitted to receive the requested records and that he had been

---

3. In NCCI-21-002555, Curry charged Howard with assaulting another inmate based on Curry's review of prison-camera footage.

told multiple times at NCCC by unit staff that he was not permitted to receive them. Shuler's response did not state the reasons why Howard was not allowed to receive the requested records.

## B.  Howard Files This Action

{¶ 8} Howard commenced this action on September 19, 2022, alleging that respondents had not provided any documents responsive to his public-records requests.  Howard's complaint sought a writ of mandamus ordering respondents to produce the requested records and an award of statutory damages as to each request. Respondents filed an answer to the complaint, denying any violation of the Public Records Act.

## C.  Respondents Provide Some Documents

{¶ 9} After filing their answer to Howard's mandamus complaint, on November 2, 2022, respondents' counsel sent to Howard a letter intended to be a response to Howard's public-records requests (the "November 2022 response"). The November 2022 response addressed each of Howard's requests referenced in the complaint, attached documents responsive to certain requests, and in other cases explained why documents were not provided.

### 1.  The April 28, 2020 Requests

{¶ 10} As to Howard's first April 28, 2020 request, respondents provided copies of the records responsive to request Nos. 1, 4, and 5.  There were no records responsive to request No. 3 because, according to respondents, "[n]o I&E funds were used for the Thanksgiving and Christmas meals."  Respondents did not provide records responsive to request No. 2, because "I&E disbursements [were] hanging in all dorm rooms and [were] available for public inspection by all inmates."

{¶ 11} As to Howard's second April 28, 2020 request, respondents attached copies of the requested kites.

6

### 2. *The July 25, 2020 Request*

**{¶ 12}** The November 2022 response also addressed the July 2020 request. Documents responsive to request Nos. 1 and 2 were attached to the response. Respondents did not provide documents in response to request No. 3, taking the position that Howard's request "for the source of funds [that] paid for the new sinks installed at Morro A/B" was for "information related to prison infrastructure and private expenses paid by MTC." Respondents informed Howard that request No. 3 was improper because it sought private information about projects "that [were] not paid for with public or I&E funds."

**{¶ 13}** As to request No. 4, which sought documentation regarding whether "the I&E fund was used to purchase the recent 'power breeze fans,' " respondents informed Howard that his request was "not limited in time or scope, nor [did] it properly identify the exact dates and locations of these fans." Respondents also informed Howard that all I&E fund expenditures "[were] publicly available for inspection in the dorm rooms."

### 3. *The August 21, 2022 Request*

**{¶ 14}** Finally, the November 2022 response addressed Howard's August 2022 request. Respondents provided Ohio Department of Rehabilitation and Correction ("DRC") Policy No. 53-CLS-01 as the response to request No. 1 and DRC Policy No. 59-LEG-01 as the response to request No. 6. Respondents also provided a copy of a document responsive to request No. 5 and stated there were no records responsive to request No. 7.

**{¶ 15}** Respondents did not provide records responsive to request Nos. 2, 3, or 4, finding all of them objectionable because they sought copies of documents that were either exempt from disclosure or should have already been in Howard's possession.

### D. Matters Remaining Before the Court

**{¶ 16}** We granted an alternative writ and set a schedule for the submission of evidence and briefing. 169 Ohio St.3d 1439, 2023-Ohio-482, 203 N.E.3d 727. In his merit brief, Howard narrows the relief he seeks in this action. He still seeks a writ of mandamus ordering respondents to provide records in response to his August 2022 request. But even though Howard maintains that respondents have not provided all records responsive to his first April 2020 request or his July 2020 request, he does not ask this court to issue a writ as to those requests. Nor does Howard's merit brief seek mandamus relief as to the second April 2020 request. Accordingly, we address Howard's mandamus claim only as to the August 2022 request. *See State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, ¶ 26, fn. 4 (the court need not address request for writ of mandamus that was raised in complaint but was not specifically argued in merit brief).

**{¶ 17}** Howard's claim for statutory damages remains pending as to three of his public-records requests. Howard asks the court to award $1,000 in statutory damages for the first April 2020 request, the July 2020 request, and the August 2022 request.

## II. ANALYSIS

### A. Writ of Mandamus for August 2022 Request

**{¶ 18}** The Ohio Public Records Act, R.C. 149.43, requires a public office to make copies of public records available to any person upon request within a reasonable time. R.C. 149.43(B)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. *State ex rel. Parker Bey v. Byrd*, 167 Ohio St.3d 358, 2022-Ohio-476, 192 N.E.3d 466, ¶ 9. The requester must establish by clear and convincing evidence a clear legal right to the records and a corresponding clear legal duty on the part of the public office to provide them. *Id.*

{¶ 19} As noted above, Howard now seeks a writ of mandamus only for his August 2022 public-records request. After respondent Shuler initially denied the request in toto, respondents sent Howard the November 2022 response in which they provided some records responsive to certain requests and explained why other documents were not provided. Because of their November 2022 response, respondents argue that Howard's mandamus action is moot because they have timely provided all records responsive to Howard's public-records requests to which he is entitled.

{¶ 20} Howard disputes that he has received all requested records to which he is entitled. He argues that he is still entitled to the following records he requested in August 2022:

- Request No. 1: a copy of the document that authorized an April 2021 security review involving Howard;

- Request No. 2: camera footage or photographs that the Rules Infraction Board reviewed in case No. NCCI-21-002555 in April 2021;

- Request No. 3: a copy of a theft-loss report completed by correction officers in March 2021 related to property of Howard's that was destroyed;

- Request No. 4: a copy of informal complaints that Howard was alleged to have forged;

- Request No. 6: a copy of the documents that give authority to NCCC mail room staff and Shuler to prohibit prisoners from discussing legal issues in personal correspondence between prisoners; and

- Request No. 7: a copy of the records stating the reasons for denying Howard's requests to move to another dorm in 2019 and 2020.

{¶ 21} We deny the writ as to request Nos. 1, 6, and 7 because Howard has not shown entitlement to relief. As to request Nos. 1 and 6, respondents provided a copy of DRC Policy No. 53-CLS-01 and DRC Policy No. 59-LEG-01 as the

authorities Howard requested. On their face, these documents provide information responsive to Howard's requests. And as to request No. 7, respondents said there were no records responsive to this request. Though Howard claims he has not received all the records responsive to his August 2022 request, he has not created a genuine issue of fact as to whether additional records responsive to request Nos. 1, 6, or 7 exist. *See State ex rel. Frank v. Clermont Cty. Prosecutor*, 164 Ohio St.3d 552, 2021-Ohio-623, 174 N.E.3d 718, ¶ 15.

{¶ 22} We grant the writ, however, as to request Nos. 2, 3, and 4. As to camera footage or photographs (request No. 2), respondents have stated simply, "This request calls for information protected from disclosure." However, they cite no statutory exception to support this bare assertion. Indeed, this court has not categorically exempted such records from public-records disclosure. *See, e.g.*, *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 11-12 (security-camera footage was not an exempt infrastructure record when it did not show more than what could have been gleaned from a simple floor plan).

{¶ 23} As to request No. 3, a "theft loss report" related to a specific incident from March 2021, respondents did not produce the document, stating that this was a report completed "in triplicate" and that inmates "are instructed to retain a copy for themselves." Respondents offer no sworn evidence to corroborate this assertion. But even if Howard had retained a copy of the document more than a year earlier, respondents point to nothing in the Public Records Act that forbids Howard from requesting a copy of it as a public record. And respondents cite no statutory justification for withholding the document from disclosure as a public record.

{¶ 24} Finally, as to request No. 4, respondents' November 2022 response stated that the request sought "confidential witness/victim statements from [i]nmate [i]nformants/witnesses" and that responsive documents were therefore exempt

under R.C. 5120.21(D)(3).[4]   Respondents also contend that the requested documents are "confidential law enforcement investigatory record[s]" exempt from disclosure under R.C. 149.43(A)(1)(h).  However, respondents have provided no evidence to support these assertions.  For example, respondents submitted no affidavit that testifies to the contents of the documents Howard seeks in request No. 4.  And it is not readily apparent from Howard's request why the responsive documents would contain confidential information exempt from disclosure under R.C. 5120.21(D)(3) or 149.43(A)(1)(h).  "[W]hen the applicability of a public-records exemption is not readily apparent from the content of the record, the records custodian must provide 'specific factual support that goes beyond mere conclusory statements in an affidavit to show that the record sought falls squarely within the prescribed exception.' "  *State ex rel. Sultaana v. Mansfield Corr. Inst.*, __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.3d __, ¶ 34, quoting *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 50.  Here, respondents offer only conclusory statements in an unsworn letter. They have therefore failed to meet their burden of establishing the applicability of an exception.

{¶ 25} For these reasons, we grant a writ of mandamus ordering respondents to provide records responsive to request Nos. 2, 3, and 4 of Howard's August 21, 2022 public-records request.

### B.  Statutory Damages

{¶ 26} Howard seeks statutory damages totaling $3,000, the statutory maximum of $1,000 for each of the "late and incomplete" responses to the April 2020, July 2020, and August 2022 requests.  Respondents argue that statutory damages should be denied because they have provided all records to which Howard is entitled, rendering moot his mandamus claims.  Respondents' argument is

---

4. R.C. 5120.21(D)(3) provides that "[s]tatements made by inmate informants" shall be kept confidential "except by the consent of [DRC] or the order of a judge of a court of record."

without merit for two reasons.  First, even when a mandamus action is moot, a relator in a public-records mandamus action may recover statutory damages based on the unreasonable amount of time the public office took to provide the requested records.  *State ex rel. Straughter v. Ohio Dept. of Rehab. & Corr.*, __ Ohio St.3d __, 2023-Ohio-1543, __ N.E.3d __, ¶ 15.  Second, as explained earlier, respondents did *not* provide all records responsive to Howard's August 2022 request; thus, the mandamus claim as to that request is not moot.

{¶ 27} R.C. 149.43(C)(2) provides that a public-records requester shall be entitled to statutory damages if (1) he made a public-records request by one of the statutorily prescribed methods, (2) he made the request to the public office or person responsible for the requested public records, (3) he fairly described the records being requested, and (4) the public office or person responsible for the public records failed to comply with an obligation in accordance with R.C. 149.43(B).  In this case, Howard is eligible for an award because he transmitted his requests by electronic kite.  *See State ex rel. Griffin v. Sehlmeyer*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, ¶ 21 (relator made his public-records request "by electronic submission" by transmitting a kite electronically and therefore satisfied the transmission requirement under R.C. 149.43(C)(2)).  And respondents do not dispute that Howard made his request to the public office or person responsible for the requested public records or that Howard fairly described the records he sought.  Accordingly, Howard's entitlement to statutory damages turns on whether respondents failed to comply with an obligation under R.C. 149.43(B).

*1.  Respondents' Reliance on* State ex rel. Griffin v. Sehlmeyer *Is Misplaced*

{¶ 28} Respondents argue that they did not violate an obligation under R.C. 149.43(B) as to the April or July 2020 requests, because the law at the time of those requests did not require them to provide the requested records.  They argue that production of electronic kites as public records was not necessary until this court decided *Griffin* on April 27, 2021.  Accordingly, respondents argue they could not

12

have violated an obligation to produce the requested records in response to Howard's April and July 2020 public-records requests.

{¶ 29} Respondents' argument is without merit for two reasons. First, they are wrong to characterize Howard's April and July 2020 public-records requests as requesting merely copies of kites. Neither the first April 2020 request nor the July 2020 request that remain at issue in this case requested kites—of the nine records sought between those two requests, *none* were kites.

{¶ 30} Second, respondents misread *Griffin*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60. In that case, this court held that an electronic kite transmitted through a prison's "JPay" system qualified as electronic submission for purposes of statutory damages under R.C. 149.43(C)(2). *Griffin* at ¶ 21. This court did *not* hold for the first time in *Griffin* that electronic kites were subject to disclosure as public records.

### 2. The April 2020 Request

{¶ 31} Howard argues that he is entitled to statutory damages for his first April 2020 request because of respondents' "incomplete" response and "extreme delay" in responding to the request. In the original response to Howard's public-records request, Shuler refused to provide any records on the basis that all responsive records "are hanging in the dorms for ALL inmates to read." (Capitalization sic.) More than a month after Howard commenced this action, however, respondents provided responsive records. (Howard disputes that *all* responsive records were provided, but he does not seek a writ of mandamus as to the records not provided.)

{¶ 32} Statutory damages are appropriate upon a showing that a public office or public-records custodian did not provide responsive records within a reasonable time. *See* R.C. 149.43(B)(1) and (C)(2); *State ex rel. Ware v. Akron*, 164 Ohio St.3d 557, 2021-Ohio-624, 174 N.E.3d 724, ¶ 18. "[T]he determination of what is 'reasonable' depends upon all the pertinent facts and circumstances."

*State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 23. In this case, after initially denying Howard's records request in toto, respondents sent responsive records in November 2022—more than 30 months after Howard delivered his April 2020 request. The records that respondents produced responsive to Howard's three public-records requests at issue in this action were not voluminous (approximately 40 pages), and respondents have provided no affidavit testimony or other evidence to explain why responsive records could not have been provided sooner.

{¶ 33} Rather than justify the 30-month delay from the time of Howard's request, respondents instead emphasize that they provided records within a reasonable time after Howard's August 2022 request. Because they provided records 73 days after Howard sent his August 2022 request, respondents contend that statutory damages are not warranted. R.C. 149.43(B)(1) provides that "*upon request* by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost *and within a reasonable period of time*." (Emphasis added.) Thus, the statute measures reasonableness of the response time by reference to the date of the request, and respondents did not provide responsive records to Howard within a reasonable time of his April 2020 request. Statutory damages are therefore appropriate as to that request.

### 3. The July 2020 Request

{¶ 34} Howard also argues that he is entitled to statutory damages for his July 2020 request because respondents provided an "incomplete" response 28 months after the request. Catanese initially responded to Howard that the request "is being reviewed" and would "require additional time for a response." However, respondents did not provide responsive records until November 2022 when they provided approximately 40 pages of documents responsive to Howard's three public-records requests at issue in this action.

{¶ 35} Statutory damages are warranted here for the same reasons as the April 2020 request. Respondents do not justify the 28-month delay in providing responsive records; rather, they contend their response came within a reasonable time because they provided records 73 days after Howard's August 2022 request. For the reasons stated above, this argument is without merit. We therefore award Howard statutory damages for respondents' delay in providing records in response to the July 2020 request.

### 4. The August 2022 Request

{¶ 36} As explained above, we grant Howard a writ of mandamus ordering respondents to provide records responsive to request Nos. 2, 3, and 4 of Howard's August 21, 2022 public-records request. Because Howard has shown that respondents failed to comply with their obligation to provide records that he requested via electronic kite, Howard has shown that he is eligible for an award of statutory damages. *See Griffin*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, at ¶ 21-22.

{¶ 37} We may reduce or decline to award statutory damages if "a well-informed * * * person responsible for the requested public records reasonably would believe that" respondents' conduct "did not constitute a failure to comply with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and if "a well-informed * * * person responsible for the requested public records reasonably would believe that" respondents' conduct "would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b). These factors for elimination or reduction, however, do not apply here. Respondents have argued that they have fully responded to Howard's requests and have attempted to justify their refusal to disclose certain records. But as explained above, their reasons for withholding requested records are not supported by evidence and, in some cases, not supported by a statutory exception.

*5. Maximum Statutory Damages for Each Request*

**{¶ 38}** Under R.C. 149.43(C)(2), statutory damages accrue at the rate of $100 for each business day respondents failed to meet their R.C. 149.43(B) obligations, beginning on the day Howard filed this mandamus action, up to a maximum of $1,000 per request. And Howard is "entitled to one damage award for each public-records request." *State ex rel. Myers v. Meyers*, 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579, ¶ 59.

**{¶ 39}** For the reasons stated above, respondents failed to meet their obligations with respect to three separate public-records requests—the first April 2020 request, the July 2020 request, and the August 2022 request. Therefore, we award Howard the maximum amount of statutory damages for each request, for a total award of $3,000.

## III. CONCLUSION

**{¶ 40}** For the foregoing reasons, we grant a writ of mandamus ordering respondents to provide records responsive to request Nos. 2, 3, and 4 from Howard's August 21, 2022 public-records request. We deny the writ as to the remaining public-records requests because Howard no longer seeks mandamus relief as to those requests. We also award Howard statutory damages in the amount of $3,000.

Writ granted in part<br>and denied in part.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Jeffery L. Howard, pro se.

Mansour Gavin, L.P.A., Edward O. Patton, Michael P. Quinlan, and Katie E. Epperson, for respondents.

_____