[Cite as *Mantell v. Cuyahoga Cty. Prosecutor's Office*, 2023-Ohio-2768.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| GREG MANTELL | Case No. 2023-00225PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| CUYAHOGA COUNTY PROSECUTOR'S OFFICE | |
| Respondent | |

{**¶1**} This matter is before the special master for a report and recommendation pursuant to R.C. 2743.75. The special master recommends that judgment be entered for Respondent and that Requester bear the costs of this case.

## I.   Background.

{**¶2**} Requester Greg Mantell is investigating the sealing of criminal records in Cuyahoga County. In the process of doing so he made public records requests to the Cuyahoga County Public Defender, Common Pleas Court, and Prosecutor's Office. He received significant records from the Public Defender, information from the Common Pleas Court, but nothing from the Prosecutor's office. *Complaint*, filed March 24, 2023, pp. 24-25. [1]

{**¶3**} Mr. Mandell filed this case to enforce his requests to the Prosecutor's Office. Mediation was unsuccessful, so a schedule was set for the parties to submit evidence and memoranda supporting their positions. The time for those submissions has passed and the case is ready for decision. *Order Terminating Mediation*, entered June 5, 2023.

---

[1] All references to specific pages of unpaginated matters filed in this case are to pages of the PDF copies posted on the Court's online docket. References to specific pages of internally paginated filings are based on their internal pagination.

**II.      Analysis**.

**A. Respondent's motion to dismiss should be denied and the case should be resolved on the merits.**

{¶4} The Prosecutor's office seeks dismissal pursuant to Civ. R. 12(B)(6). A Civ. R. 12(B)(6) motion cannot be granted if the movant relies on evidence beyond the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). The Prosecutor's motion is based on evidentiary materials that go beyond Mr. Mantell's complaint. That requires that the motion be denied and that the court weigh the evidence through a merits analysis.

**B. Requester's claims fail on the merits.**

{¶5} Mr. Mandell made several public records requests of the Prosecutor's Office:

| Date | Request | Complaint pp. |
|---|---|---|
| 1/24/2023 | "A copy of your office's policy regarding helping people seal their court records." | 16-17 |
| | | |
| | "copies of documents, emails, reports or other materials that indicate how many people your office has helped to seal their court records for about the past ten years from January 1, to present" | 18 |
| | | |
| 1/25/2023 | "Your website says: The Prosecutor's Office has a team of assistant prosecuting attorneys who review applications for sealing (often called "expungement") of records of eligible offenders. I would like to know how many applications your office has reviewed since January 1, 2017." | 19 |
| | | |
| | "Under Ohio's public records law, I would like to know how many briefs your office has filed in court supporting and / or opposing the sealing or expungement of court records, whether felony, misdemeanor, or civil--since January 1, 2017." | 19 |
| | | |

| 2/9/2023 | "I am requesting an Excel or .cvs extract form [sic] your case management system listing all cases in which you have filed a brief with the court supporting or opposing the sealing or expunging of records since January 1, 2017, including the following or similar fields: 1) date or year that papers were prepared, 2) date or years that papers were filed, 3) type of crime, 4) whether you opposed or supported the effort to expunge or seal records or charges. This does not [sic] require you to reveal any confidential or sealed information. But simply provides statistical date [sic] on the number of such briefs you have filed with the court." | 22 |
| --- | --- | --- |
|  |  |  |
| 2/10/2023 | "Under Ohio's public records law, I would like to request copies of emails, reports, documents or other materials that indicate the number of requests for expungement or sealing of records received by your office on an annual basis from January 1, 2017 to present." <br><br> "In lieu of such a report, a .CSV or Excel extract from your case management system showing the following fields will suffice: 1) date or year of request, [sic] 2) date or year of charges or sentence, 3) type of sentence or charge, 4) disposition (whether the sealing or expungement was approved or recommended by your office), and 4) final outcome (whether the sealing or expungement was approved.)" | 22 |

The special master recommends that the court reject any claims based on those requests.

1. **Mr. Mantell has not shown that records responsive to his January 24, 2023, requests exist.**

{¶6} Controlling precedent establishes that a party suing for public records must prove that responsive records exist if the public office submits evidence disputing their existence. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶¶ 22-26; *State ex rel. Gooden v. Kagel*, 138 Ohio St. 3d 343, 2014-Ohio-869, 6 N.E.3d 1170, ¶ 8. That precedent is fatal to claims based on Mr. Mantell's January 24 requests.

{¶7} Those requests sought copies of the Prosecutor's "policy regarding helping people seal their court records" and records that disclose how many people the Prosecutor helped with sealings. The Prosecutor's Office's initial response was that it has no such policy and that there are no records evidencing its helping people seal their records because that Office does not provide such help. *Complaint*, p. 18; *Submission of Evidence for Respondent Cuyahoga County Prosecutor's office*, filed June 26, 2023, ("*Respondent's Evidence*"), pp. 011. The Prosecutor ratified those assertions with affidavit testimony. *Id.* at pp. 002, ¶¶ 3, 4.

{¶8} Mr. Mantell therefore had the burden of proving that such records existed. He filed no evidence by the June 26, 2023, deadline fixed in the *Order Terminating Mediation*. His July 10, 2023, response to the Prosecutor's motion to dismiss proffers a page from the Prosecutor's website as proof that the policy he seeks and records documenting how many people the Prosecutor "helped" obtain sealings do in fact exist. There are two reasons why that does not satisfy Mr. Mantell's burden.

{¶9} First, that submission is procedurally barred. The *Order Terminating Mediation* explicitly required Mr. Mantell to file evidence in support of his claims by June 26, 2023. *Id.* at ¶ A. That date was set to give the Prosecutor's Office notice of the factual bases for Mr. Mantell's claims before it filed its response to his complaint. Mr. Mantell did not meet that deadline, frustrating the purpose for the deadline. Mr. Mantell's tardy submission is not properly before the court.

{¶10} Second, the webpage proffered actually supports the Prosecutor's position. Rather than saying that the Prosecutor's Office "helps" offenders with attempts to expunge/seal records, it emphatically states that "**we cannot assist you with applying to have your record sealed**" (emphasis in original). It goes onto tell interested persons to "not contact our office to request help with an expungement application" and to "remember: The Cuyahoga County Prosecutor's Office cannot assist you in applying to have your record sealed[.]" Cuyahoga County Office of the Prosecutor, *Sealing Criminal Records*, available at http://prosecutor.cuyahogacounty.us/en-US/expungement-and-sealing-of-records.aspx (accessed July 17, 2023).

{¶11} The special master therefore recommends that the court reject these claims for want of proof.

### 2. Mr. Mantell's January 25, 2023, requests seek information apart from records.

{¶12} R.C. 149.43(B)(1) codifies a right to records that capture information, not to information apart from records. It nowhere mentions information in the abstract. It instead provides that upon "request * * * *public records* responsive to the request shall be * * * made available[.]" (emphasis added). A "public record" consists of a "record," and a "record" is something that contains information, but is different than the information itself. It is a "document, device, or item" documenting information. R.C. 149.011(G). R.C. 149.43(B)(1) therefore does not direct offices to provide free floating information, but only documents, devices, or items containing information.

{¶13} The cases reflect the distinction. Relief is denied when the claimant "request[s] information rather than records" because requests "for information * * * are improper *** under R.C. 149.43*.*" *State ex rel. Griffin v. Sehlmeyer*, 167 Ohio St.3d 566, 2022-Ohio-2189, 195 N.E.3d 130, ¶ 1; *State ex rel. Morgan v. City of New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30. See also *Griffin*, 167 Ohio St.3d 566 at ¶¶ 10-13; *State ex rel. Griffin v. Sehlmeyer*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, ¶¶ 11-12; State ex rel. *Griffin v. Sehlmeyer*, 166 Ohio St.3d 258, 2021-Ohio-3624, 185 N.E.3d 58, ¶¶ 5-6; *State ex rel. Rittner v. Dir., Fulton Cty. Emergency Med. Servs*., 6th Dist. Fulton No. F-10-020, 2010-Ohio-4055, ¶ 2; *State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 Ohio App. LEXIS 2591, at **2-4 (Apr. 28, 1993), aff'd, 68 Ohio St.3d 117, 623 N.E.2d 1201 (1993) (denying relief because claimant's request did "not indicate what records [he] would like to examine as much as what information he would like to receive").

{¶14} Mr. Mantell's January 25 requests asked "how many applications your office has reviewed" and "how many briefs your office has filed" since a given date. They sought numerical information, not records. Such requests are improper. See e.g. *State ex rel. Griffin v. Sehlmeyer*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, ¶ 12 (request for the "actual number" of staff infected with Covid-19 improper); *State ex rel. Griffin v.*

*Sehlmeyer*, 167 Ohio St.3d 566, 2022-Ohio-2189, 195 N.E.3d 130, ¶ 11 (request for "'the actual amount of state, and or federal funding that ODRC, has approved to \*\*\* to fight COVID 19, at the prison,' specifically 'the amount approved to \*\*\* and the total amount spent'" were improper).

3. **Mr. Mantell's February 9, 2023, request seeks information apart from records and asks the Prosecutor to create a new record.**

{¶15} There are two independently fatal flaws in Mr. Mantell's February 9 request.

{¶16} *First, it too seeks information apart from records*. It does not seek records, but instead seeks data points derived from—and separate from—records. That is inherent in the request for that information in "extract" form.  To "extract" is seek something apart from its source, "to draw forth (as by research)" or to "to deduce (a doctrine, principle, interpretation, etc.") *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/extract (accessed July 17, 2023); *Dictionary.com*, available at https://www.dictionary.com/browse/extract (accessed July 17, 2023). There is no getting around the fact that this request seeks something different from the Prosecutor's records.

{¶17} *Second, it asks the Prosecutor to create a new record*. A public office has no duty under R.C. 149.43 "to create a new document by searching for and compiling information from its existing records." *State ex rel. Kerner v. State Teachers Retirement Bd.*, 82 Ohio St.3d 273, 274, 695 N.E.2d 256 (1998); accord, *State ex rel. Essi v. City of Lakewood*, 2018-Ohio-5027, 126 N.E.3d 254 (8th Dist.), ¶ 28; *Anthony v. Columbus City Schools*, Ct. of Cl. No. 2021-00069PQ, 2021-Ohio-3242, ¶ 8, adopted, 2021-Ohio-3241 (Sheeran, J.), ("A public office is only required to produce existing records and has no obligation to create new records, including new compilations of dispersed data"). That is what Mr. Mantell asks the Prosecutor to do by creating an extract that summarizes other records.

{¶18} This defect is not cured by the "Database Rule," the rule that a public office must generate records from existing data if its records management system can generate the records without modifications to that system. "Ohio courts expressly require public offices to give the public the benefit of data and computing power that the public has paid for and produce any database record compilation available through existing

programming, even if the requested compilation is 'new' in the sense that the office has not used the database software to compile that particular set of information in the past." *Id.*, ¶ 8: *Speros v. Secy. of State*, Ct. of Cl. No. 2017-00389-PQ, 2017-Ohio-8453, ¶ 15, adopted Dec. 11, 2017 (McGrath, J.); *Fairley v. Cuyahoga Cty. Prosecutor*, Ct. of Cl. No. 2019-00955PQ, 2020-Ohio-1425, ¶ 25, adopted 2020-Ohio-1426 (McGrath, J.). The rule is based on the premise that the "law does not require members of the public to exhaust their energy and ingenuity to gather information which is already compiled and organized *** by public officials at public expense." *State ex rel. Cincinnati Post v. Schwiekert*, 38 Ohio St. 3d 170, 173-174 527 N.E.2d 1230 (1988). Consequently, if a public body's "computer [is] already programmed to produce the desired printout, the [record] would already exist for the purpose of an R.C. 149.43 request," and the office is required to produce that existing, albeit inchoate, record. *State ex rel. Scanlon*, 45 Ohio St. 3d 376, 379, 544 N.E.2d 680 (1989). Consistent with that rationale, the Database Rule does not apply if the office's systems are not capable of producing the record; in that situation the record would not exist. *Kerner*, 82 Ohio St.3d at 274, 275; *Anthony*, 2021-Ohio-3242, ¶ 10. If the public office produces evidence that its systems cannot produce the record, the party invoking the Database Rule has the burden of proving that the office's systems can, in their unaltered form, create the desired record. *Id.* ¶¶ 12-13; *Speros*, 2017-Ohio-8453, ¶¶ 17-19.

{¶19} The Prosecutor produced affidavit testimony that its record management system is not capable of creating the extract Mr. Mantell seeks. *Respondent's Evidence*, p. 02, ¶ 7. It is therefore Mr. Mantell's burden to prove, by clear and convincing evidence, that the Prosecutor's records management system can in fact produce the extract. Mr. Mantell filed no evidence in support of his claims, despite being ordered to do so. *Order Terminating* Mediation, ¶ A. Although documents attached to his complaint indicate that the Public Defender's and Common Pleas Court's systems were able to produce information similar to what he seeks from the Prosecutor, there is no evidence that those offices use the same record management system as the Prosecutor. Those documents therefore tell us nothing about the capabilities of whatever system the Prosecutor uses. Mr. Mantell has failed to carry his burden of proof on this point.

{¶20} Given that, the special master recommends that the court deny relief on this claim.

### 4. Mr. Mantell's February 10, 2023, request requires the Prosecutor to perform research or to create a new record.

{¶21} Mr. Mantel's February 10 request was framed in the alternative: that the Prosecutor provide copies of all records indicating the number of expungement/sealing requests that Office has received or to provide an extract of certain information about those requests. Neither alternative is enforceable.

{¶22} *The alternative of producing records indicating how many expungement/sealing requests the Prosecutor has dealt with would require improper research.* A records request is improper if the request "broadly [requires] respondents to search for records containing selected information," *State ex rel. Lanham v. State Adult Parole Auth.*, 80 Ohio St.3d 425, 427, 687 N.E.2d 283 (1997), or to "do research *** and to identify a specific subset of records containing selected information." *State ex rel. Shaughnessy v. City of Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 10. See also *State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 Ohio App. LEXIS 2591, at *3 (Apr. 28, 1993), *Aff'd* 68 Ohio St.3d 117, 623 N.E.2d 1201 (1993); *State ex rel. Essi v. City of Lakewood*, 2018-Ohio-5027, 126 N.E.3d 254 (8th Dist.), ¶¶ 28, 34, 37.

{¶23} That is what this alternative requires. It would require the Prosecutor's Office to comb through its files for any records that contain information on a particular topic, how many expungement/sealing requests it has dealt with.

{¶24} This alternative is not saved by two exceptions to the general just discussed. One is that such requests can be enforceable if the request provides sufficient parameters to guide the scope of the research involved. *State ex rel. Thomas v. Ohio State Univ.*, 70 Ohio St.3d 1438, 638 N.E.2d 1041, 1041-1042 (Ohio 1994) (request enforceable to "the extent that [the] request specified particular persons who, because of their positions, would be likely to have and maintain the records requested"). See also *Rose v. Ohio DOC*, Ct. of Cl. No. 2022-00711PQ, 2023-Ohio-1488, ¶ 20, adopted 2023-Ohio-1856 (Sadler, J.) ("A request is likely to reasonably identify the records sought if it refers the

public office to a specific subject matter, it is sent to or identifies an official with knowledge of that subject matter, and it references a relevant time period"). The other is that such requests are enforceable if the research will not involve "voluminous documents." *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 22. Mr. Mantell identified no persons within the Prosecutor's Office who maintain the records he sought and provided no other parameters to guide the research his request would require. His complaint indicates that the scope of the records relevant to this matter would indeed be voluminous, involving more than 10,000 case files. *Complaint,* pp. 40-41. Neither exception applies.

**{¶25}** *The second alternative fails for the reason discussed in connection with the February 9 request.* It too seeks information apart from records and would require the creation of a new record.

**{¶26}** The special master therefore recommends that the court find that any claims based on the February 10 request fail.

## C. Costs.

**{¶27}** Costs should be assessed against Mr. Mantell pursuant to R.C. 2743.09(F), and R.C. 2303.20 because he implicitly agreed to pay those costs by filing this case. *Helfrich v. Hall*, 5th Dist. Licking No. 2021 CA 00077, 2022-Ohio-1852, ¶ 25.

## III.     Conclusion.

**{¶28}** Based on the foregoing the special master recommends that judgment be entered for Respondent and that Requester bear the costs of this case.

**{¶29}** *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD MARTI
Special Master

**Filed July 18, 2023**
**Sent to S.C. Reporter 8/10/23**