[Cite as *State ex rel. Clark-Shawnee Local School Bd. of Edn v. Springfield*, 2024-Ohio-2483.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | |
|---|---|
| STATE OF OHIO EX REL. CLARK-SHAWNEE LOCAL SCHOOL DISTRICT BOARD OF EDUCATION | C.A. No. 2024-CA-9 |
| Relator | **DECISION AND FINAL JUDGMENT ENTRY** |
| v. | |
| CITY OF SPRINGFIELD | |
| Respondent | |

_____

PER CURIAM:

{¶ 1} This matter is before the court on consideration of the parties' briefs on the appropriateness of awarding statutory damages, attorney fees, and court costs in this action. Previously, on March 27, 2024, this court determined that the mandamus claim of relator Clark-Shawnee Local School District Board of Education (the "Board") to compel respondent City of Springfield to respond to a public records request was moot. *See State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 13 ("a public office may produce the requested records prior to the court's decision, which renders the mandamus claim for production of records moot"). Nevertheless, it appeared to this court that the Board

might be entitled to other forms of relief under R.C. 149.43. *Id*. We proceed to adjudicate the matter accordingly.

## I. Factual Background

{¶ 2} On December 8, 2023, the Board filed two public records requests with the City's law department. The first request sought records from the City Commission. The second request sought records from the City Planning Board. Although the Board sought identical categories of records from both the Commission and the Planning Board, this litigation concerns only the City's response to the request for Commission records. The records requested related to the process by which the CEDA Regional Planning Commission approved a plat of the "Melody Parks" real estate development, including "any and all correspondence, including email correspondence" between members of the Commission and various stakeholders in the development, minutes of the Commission's meetings, and agendas from those meetings.

{¶ 3} The City acknowledged receipt of the request for Commission records on the day it was submitted. The law department's administrative staff immediately began to "[assign] tasks to relevant department personnel to gather and accumulate records related to the requests."  An assistant law director was assigned supervisory responsibility for the matter.

{¶ 4} The Clerk of the Commission, having been made aware of the Board's request, contacted the City's IT Manager to collect responsive email correspondence. The IT Manager then directed the Clerk of the Commission to contact the law department to assist him in developing a query.

{¶ 5} City employees began uploading responsive records to a shared Google

Drive folder for legal review. Some of the records were available for review as early as December 20, 2023.

{¶ 6} Between December 20, 2023, and December 27, 2023, the law department's administrative staff was on vacation. Likewise, the assistant law director and his supervisor, the law director, were on vacation between December 22, 2023, and January 2, 2024.

{¶ 7} On December 28, 2023, the Board, through its counsel, emailed the City's law department for a status update on its requests. Administrative staff responded that the City was "still working with the necessary departments to gather your requested documents."

{¶ 8} Although administrative staff had collected records for legal review by December 28, 2023, the assistant law director did not begin to review them until his return to the office on January 2, 2024. There is no indication that the assistant law director took any further action on the requests until January 12, 2024, when he scheduled a meeting with Planning Board staff, to discuss the records previously uploaded in December.

{¶ 9} After the January 17, 2024 meeting, additional documents were uploaded to Google Drive. The assistant law director reviewed "some" of the documents on January 19, 2024. The Clerk of the Commission also contacted the IT Manager a second time regarding the collection of email correspondence; however, it does not appear that the law department provided the relevant information for a query, i.e., relevant names and dates, until January 23, 2024.

{¶ 10} On January 22, 2024, the assistant law director contacted counsel for the Board "indicating that [the City] had records subject to one of the requests and would be

able to provide a response." The records, approximately 200 in number, related "mostly to the Planning Board" request but had some overlap with the records requested from the Commission.

{¶ 11} On January 23, 2024, the City provided the Board with the records referenced the previous day. It is undisputed that the City's production of documents was not completely responsive to the Board's request for Commission records.

{¶ 12} On January 25, 2024, the Board filed this mandamus action.

{¶ 13} On January 30, 2024, law department administrative staff contacted the City's IT Manager. The IT Manager "expedited the search" for responsive emails because the City "had been sued." That same day, the IT Manager delivered a flash drive to the assistant law director containing over 500 email documents with attachments. On January 31, 2024, the City provided the remainder of any documents it considered responsive to the Board's December 8, 2023 request for records of the Commission.

{¶ 14} On February 9, 2024, the Board complained that the records received from the City did not include text messages. The assistant law director instructed relevant personnel to review their cellular phones and collect any responsive messages. Eighty-three text messages were provided to the Board on February 13, 2024.

{¶ 15} On February 22, 2024, the City moved to dismiss this action. On March 27, 2024, this court issued an order overruling the City's motion. Although the Board's mandamus claim was moot because it was beyond dispute that the City had provided all the requested records, the Board still might demonstrate that the City did not produce the records within a reasonable period of time and thus recover statutory damages, attorney fees, and court costs.

## II. Law & Analysis

### A. The Board is Entitled to Statutory Damages

{¶ 16} The Board is entitled to statutory damages if: (1) it made a public records request by one of the statutorily prescribed methods, (2) made its request to the public office responsible for the requested records, (3) fairly described the records being requested, and (4) the public office failed to comply with an obligation under R.C. 149.43(B). *State ex rel. Barr v. Wesson*, 2023-Ohio-3645, ¶ 16; R.C. 149.43(C)(2). The amount of damages accrues at $100 for each business day during which the City failed to meet its obligation, beginning on the day that the Board filed this mandamus action, up to a maximum of $1,000. *Id.*

{¶ 17} There is no dispute that the Board made a public records request by a statutorily prescribed method. So too, the City does not dispute that it is a proper respondent. Thus, the relevant questions are whether the Board fairly described the records being requested and whether the City failed to comply with an obligation under R.C. 149.43. These questions are interrelated.

{¶ 18} The Public Records Act requires that "[u]pon request * * * all public records responsive to the request shall be promptly prepared and made available for inspection." R.C. 149.43(B)(1). Further, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." *Id.* Thus, "[t]he primary duty of a public office when it has received a public records request is to promptly provide any responsive records within a reasonable amount of time and when a records request is denied, to inform the requester of that denial and provide the reasons for that denial."

*State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 11; *accord State ex rel. Bott Law Group, L.L.C. v. Ohio Dept. of Nat. Resources*, 2013-Ohio-5219, ¶ 21 (10th Dist.) (a public office's "clear legal duty is to promptly prepare *all* responsive documents and to make copies of *all* such records available to relator within a reasonable period of time"). Whether the City complied with its statutory duty to respond within a reasonable period of time to the Board's requests "depends upon all of the pertinent facts and circumstances." *Paden* at ¶ 12. The Board has the burden of proving that the City's response was unreasonably delayed. *Id.*

{¶ 19} In this case, the City's law department acknowledged the Board's public records request on December 8, 2023, but it was not until January 23, 2024 – 46 days later – that the City provided any substantive response to the Board's request for records. The City admits that its January 23, 2024 response was only partially responsive to the Board's request for Commission records.

{¶ 20} On January 25, 2024, the Board filed its mandamus action to compel compliance with the Public Records Act. On January 31, 2024, four business days after the Board filed its mandamus action and 54 days after acknowledging receipt of the request, the City "provided what it believed to be in good faith the entirety of the records requested."

{¶ 21} The Board argues that the City's January 31, 2024 response was also incomplete. The Board argues that its request for "correspondence, including electronic mail correspondence" included text messages – which were not provided. In contrast, the City disputes that the Board asked for text messages on December 8, 2023. The City maintains that the request was not made until February 9, 2024, by which time the

response to the December 8, 2023 request had already been completed.

**{¶ 22}** In our view, a request for "correspondence, including email correspondence" does not fairly describe a request for text messages. A requester has the responsibility of identifying with reasonable clarity the records at issue. *State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 29. Here, the Board specifically sought "correspondence, including email correspondence" from the City Commission pertaining to the Melody Parks plat. Correspondence, in the ordinary sense of the word, does not include text messages. For example, the online version of Merriam-Webster's Dictionary defines "correspondence" as "communication by letters or email." Merriam-Webster, *Dictionary*, https://www.merriam-webster.com/dictionary/correspondence (accessed June 17, 2024). Although requesters can (and frequently do) include text messages within a broader class of records requested such as correspondence or communications, the Board did not. *See State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 20 ("e-mail messages, text messages, and correspondence" may be "records" subject to the Public Records Act). Thus, it was not reasonably clear that the Board sought text messages from the City Commission in its December 8, 2023 request. Accordingly, we find that the City completed its response on January 31, 2024, as opposed to the February 13, 2024 date suggested by the Board.

**{¶ 23}** Turning now to the question of the reasonableness of the City's response, the Board argues that the City "waited nearly two (2) months * * * to attempt to respond to Relator's public records request, and only after the filing of the Complaint in this matter, before making any effort to comply with Relator's public records request." The evidence before us does not support that conclusion, at least not without qualification.

{¶ 24} The City has presented evidence, in the form of affidavits, that it began a process of collecting and reviewing responsive records beginning on the date of the request and continuing (albeit intermittently) both before and after the Board filed this mandamus action. Nevertheless, the City's evidence also demonstrates that production of the records was unreasonably delayed.

{¶ 25} The City's response was delayed (at least in part) because key personnel, notably the assistant law director, were on vacation between the dates of December 22, 2023, and January 2, 2024. Further, we are left with the firm impression that insufficient attention was paid even when the appropriate personnel were available to work. In the two weeks before the assistant law director took vacation, some documents were collected but it does not appear that much else was done. Likewise, upon the assistant law director's return to work in January 2024, the process of collection and review of records did not move forward with any sense of urgency. In particular, the City's evidence shows that the law department waited more than a month to follow up on the IT Manager's request for assistance to develop a query to collect email correspondence of the Commission relating to the Melody Parks plat.

{¶ 26} Ultimately, it took the City almost two months to provide a relatively small number of unredacted records (less than a thousand in total) to the Board. During the process of collecting and reviewing records, the City never asserted that the Board's request was "ambiguous or overly broad." *See* R.C. 149.43(B)(2) (permitting a public office to deny such a request if it provides the requester with an opportunity to revise the request). Thus, the City has given us no good explanation for why the entire process should not have been completed far more expeditiously than it was. Therefore, after

considering the totality of the unique facts and circumstances of this case, we find that the City's production of Commission records was not completed within a reasonable period of time.

{¶ 27} Having determined that the City did not fulfill its obligation under R.C. 149.43(B)(1) within a reasonable period of time, we calculate statutory damages. The Board filed this mandamus action on January 25, 2024. The City did not provide all of the requested records until January 31, 2024 – four business days after the mandamus action was filed. Therefore, we award the Board $400 in statutory damages.

## B.   The Board's Request for Attorney Fees is Denied

{¶ 28} The Board has requested an award of attorney fees. An award of attorney fees under the Public Records Act is discretionary. *State ex rel. Harm Reduction Ohio v. OneOhio Recovery Found.*, 2023-Ohio-1547, ¶ 40.

{¶ 29} We may award attorney fees to a requester if the "public office or the person responsible for the public records failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under [R.C. 149.43(B)]." R.C. 149.43(C)(3)(b)(i). Thus, we may award attorney fees when a public office ignores a request altogether. *State ex rel. Pool v. Sheffield Lake*, 2023-Ohio-1204, ¶ 29. That is not what happened in this case. Accordingly, we find this statute to be an inappropriate basis for awarding attorney fees to the Board under the facts of this case.

{¶ 30} We may also award attorney fees if we find that a relator acted in bad faith when responsive records were voluntarily produced after the filing of a mandamus action. R.C. 149.43(C)(3)(b)(iii). Bad faith implies something more than bad judgment or negligence. *State ex rel. Summers v. Fox,* 2021-Ohio-2061, ¶ 17. The Supreme Court of

Ohio has said that:

> [Bad faith] imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * *. It means `with actual intent to mislead or deceive another.' * * *."

*Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 151 (1962), *rev'd on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994). To prove bad faith, the party seeking fees must produce some evidence of bad faith other than the fact that the record was produced. *Summers* at ¶ 17. There is no presumption of bad faith under the statute. *Id.*; R.C. 149.43(C)(3)(b)(iii).

{¶ 31} The Board alleges that the City and its assistant law director acted in bad faith by delaying its response. The Board argues that the purpose of the delay was to damage the Board's position in pending litigation in the Clark County Common Pleas Court concerning the CEDA Regional Planning Commission's approval of the "Melody Parks" plat.

{¶ 32} The Board has not met its burden of proving bad faith. The Board, in essence, argues that the delay itself (coupled with knowledge of pending litigation regarding the subject matter of a public records request) is sufficient evidence of bad faith. But, that type of reasoning is contrary to the language of the statute, which expressly does not create a presumption of bad faith in cases where responsive records are voluntarily produced following the commencement of litigation. Moreover, the Board has provided no direct evidence of the City's bad faith. And, we do not infer bad faith from the particular facts and circumstances of this case. To the contrary, all the available evidence

suggests the City's delay was the product of neglect, not malice. Accordingly, we deny the Board's request for attorney fees based on its claim of bad faith.

### C.    The Board is Not Entitled to Court Costs

{¶ 33} The Board seeks an award of court costs. An award of court costs is mandatory if a public office or person responsible for public records acts in bad faith by making the requested records available after a mandamus action is filed but before the court has ordered the production of the records. R.C. 149.43(C)(3)(a)(ii). Because we have determined that the City did not act in bad faith, we do not award the Board court costs.

### III. **Conclusion**

{¶ 34} For all the foregoing reasons, we conclude that the Clark-Shawnee Local School District Board of Education's request for a writ of mandamus to compel the City of Springfield to comply with the Ohio Public Records Act is MOOT. The writ is DENIED.

{¶ 35} Because the City of Springfield's response to the Clark-Shawnee Local School District Board of Education's public records request was unreasonably delayed, its request for statutory damages is GRANTED in the amount of $400.

{¶ 36} Because the City of Springfield did not ignore the request altogether or act in bad faith, Clark-Shawnee Local School District Board of Education's requests for attorney fees and court costs are DENIED.

{¶ 37} SO ORDERED.



_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE


_____
RONALD C. LEWIS, JUDGE




_____
MARY K. HUFFMAN, JUDGE


To The Clerk: Within three (3) days of entering this judgment on the journal, you are directed to serve on all parties not in default for failure to appear notice of the judgment and the date of its entry upon the journal, pursuant to Civ.R. 58(B).


_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE