[Cite as *Wysong v. Dayton City Hall*, 2025-Ohio-1651.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| STEPHANIE A. WYSONG | Case No. 2025-00002PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| CITY OF DAYTON CITY HALL | |
| Respondent | |

{¶1} This case is before me for a R.C. 2743.75(F) report and recommendation. I recommend that the court (1) order respondent to retrieve and produce, on a request by request basis, all records responsive to the requests reproduced in the appendix to this report or to certify, on a request by request basis, that no responsive records exist, (2) order respondent to take those actions within 30 days of the entry of a judgment regarding this report and recommendation, (3) order respondent to certify its performance of those actions within 40 days of the entry of a judgment regarding this report and recommendation, (4) find that respondent violated R.C. 149.43(B)(1)'s mandate that records be produced within a reasonable period of time, (5) order that requester recover her filing fee and costs from respondent, (6) order respondent to pay the balance of the costs of this case, and (7) deny all other relief.

**I. Background.**

{¶2} The respondent City of Dayton has contracted with a private company to operate its photo traffic enforcement program since 2017. That program issues traffic tickets for running red lights and speeding as detected by cameras. As discussed in more detail below, that company handles all aspects of the program for Dayton. That program generated considerable revenue, $20,225,276.44, between 2017 and 2024. A significant portion of those public funds went to the private company. *PQ Miscellaneous*, *Copies of*

*All Records Responsive to the Records Requests Identified in the Complaint*, filed April 4, 2025, ("*Produced Records*"), pp. 3-26, 27-30, 44-54.[1]

{¶3} Requester Stephanie Wysong made two multi-part requests to Dayton for public records related to that program. Between them, the requests sought eight categories of records. Those requests were made on September 18 and 21, 2024. Dayton processed those requests on a consolidated basis and on November 6, 2024, produced a handful of records responsive to the requests in one of the categories and indicated that it considered all the requests closed. *PQ Miscellaneous, Corrected and Consolidated Response to the Special Master*, filed April 1, 2025 ("*Requester's Evidence*"), pp. 5-9, 14-22.

{¶4} This case followed. Ms. Wysong seeks several types of relief: production of additional records, a declaration that Dayton unreasonably delayed its production of records, damages, and a finding of bad faith. Mediation was unsuccessful because Dayton did not attend, so a schedule was set, and then reset, for the parties to file evidence and memoranda supporting their positions. That schedule has run its course, making this case ripe for decision. *Complaint*, filed January 2, 2025; *Notice*, filed February 14, 2025; *Order Terminating Mediation*, entered February 18, 2025; *Order Terminating Further Mediation and Requiring Submissions Pursuant to R.C. 2743.75(E)(3)(c)*, entered March 21, 2025.

{¶5} After this case was filed Dayton filed and served a number of records it describes as being responsive to Ms. Wysong's requests. *Produced Records*, *supra*. Dayton's response to her complaint indicates that the *Produced Records* constitute the complete universe of responsive records. *Respondent's Response to Requester's Complaint*, filed April 14, 2025.

---

[1] All references to specific pages of filings in this case are to the pages of the PDF copies posted on the court's docket.

## II. Analysis.

### A. Requester's claim for production of records should be granted in part.

{¶6} The central issue regarding Ms. Wysong's production claim is whether Dayton has produced all records responsive to her requests. Dayton claims that it has, but Ms. Wysong disagrees. Two principles provide rules for resolving that dispute.

{¶7} *The first is that Dayton is required to produce additional records or certify their non-existence if Ms. Wysong has produced "some evidence" that additional records exist.* If there is sufficient evidence that a public office has failed to produce all responsive public records the office must either produce the remaining records or certify that none exist. *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶¶ 37-43, 50; *State ex rel. Harris v. Pureval*, 2018-Ohio-4718, ¶¶ 15, 18. The sufficiency of evidence to trigger that obligation varies depending on the office's response. Clear and convincing evidence is required if the office provides affidavit testimony or its equivalent that no additional records exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶¶ 22-26.  However, "some evidence" is sufficient if the office does not provide affidavit testimony negating the existence of additional responsive records. *Sultaana*, 2023-Ohio-1177, ¶¶ 37-43; *Sell v. Trumbull Cty. Juv. Div.*, 2024-Ohio-6139, ¶ 6 (Ct. of Cl.).

{¶8} Although Dayton asserts that it has produced all records responsive to Ms. Wysong's requests, it has not supported that assertion with affidavit testimony or its equivalent. It is therefore obligated to produce additional records or certify their non-existence if there is some evidence that additional records exist. Some evidence exists if other records refer to or otherwise suggest the existence of the additional records. *Mattis v. Toledo Police Dept.*, 2023-Ohio-4878, ¶¶ 17, 24, adopted 2023-Ohio-3619 (Ct. of Cl.).

{¶9} *The second is that Dayton must not only produce records in its own possession, it must also retrieve and produce records in the possession of the vendor it has hired to operate its photo traffic enforcement program.* The quasi-agency doctrine requires a public office to produce records in the possession of a private entity if those records are related to a public function the public office has delegated to that entity. *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2022-Ohio-3990, ¶¶ 7-18.

"When the quasi-agency test is satisfied, the public office has a duty to obtain requested records from the private entity and disclose them to the requester." *State ex rel. Brown v. Columbiana Cty. Jail*, 2024-Ohio-4969, ¶ 21. That test is satisfied if the evidence shows that the public office has delegated a public function to a private entity. *State ex rel. Armatas v. Plain Twp. Bd. of Trustees,* 2021-Ohio-1176, ¶ 18.

{¶10} Dayton's contract with the vendor that operates its photo enforcement program establishes that Dayton has delegated redlight and speed enforcement to that entity. *Produced Records*, p. 3, § 1(1).  Those are aspects of traffic regulation.  The "regulation of traffic is an exercise of police power" on a general level, *Marich v. Bob Bennett Constr. Co.*, 2008-Ohio-92, ¶ 14, and photo enforcement programs are an exercise of that police power. *City of Dayton v. State*, 2017-Ohio-6909, ¶ 14. The exercise of the police power is a governmental function, so Dayton's delegation of that function to a private entity triggers the quasi-agency doctrine. Dayton is therefore required to retrieve records responsive to Ms. Wysong's requests from the company it delegated that function to.

## 1.  Decisional records.

{¶11} Ms. Wyson made three requests that fall within this category. They sought:

"Any documents, reports, or studies regarding the decision-making process-for relocating photo-enforcement cameras from high accident areas to high traffic areas-between 2016~2024"

"Any emails, memos, or other forms of communication between City of Dayton officials and the photo enforcement vendor(s) regarding signage compliance, public complaints, or revenue expectations."

Communications related to any changes in signage for photo enforcement areas, including discussions about compliance with Ohio State law on signage requirements."

Dayton's response to these requests consisted of a single email chain. *Complaint*, pp. 7, 13; *Requester's Evidence*, pp. 5, 7; *Produced Records*, pp. 129-130.

{¶12} Other records Dayton produced provide some evidence that additional responsive records exist. Dayton's contract with its vendor gave the vendor complete operational control of the photo enforcement program. The vendor was responsible for "all work," "all equipment," and required the vendor to "[p]rovide system maintenance." *Id.*, p.3.  As discussed more fully below, it also required the vendor to provide Dayton with various types of documents about the revenue the program generated. *Id.* at pp. 6, 15. It also required the vendor to "provide to the City, upon request, reports or any program performance related information," and "reports and statistics concerning program effectiveness." *Id.*, p. 4. Those broad areas of operational responsibility and broad reporting requirements are some evidence that either Dayton, the vendor, or both have additional records of communications about relocating cameras, signage, and revenue. And given that the requests cover six years, those contracts are some evidence that there has been significant communication about those topics.[2]

{¶13} I therefore recommend that the court order Dayton to retrieve and produce all other records Dayton or its vendor have that are responsive to these requests or to certify that no additional records exist.

### 2. Financial records.

{¶14} Ms. Wyson made multiple requests that fall within this category. Requester sought:

> "Any financial reports *or* documents indicating the revenue generated from photo enforcement cameras in these areas, including projections or discussions on revenue generation as a factor in their relocation."

> "Annual financial reports detailing the total revenue generated by the photo enforcement program for each year from 2016 to 2024, broken down by location and camera."

---

[2] Although that request is arguably overbroad because of the amount of time it covers, Dayton waived that defense by not raising it in its pre-suit response to Ms. Wysong's requests. *State ex rel. Summers v. Fox*, 2020-Ohio-5585, ¶ 74.

"A breakdown of how this revenue is allocated or spent by the City of Dayton."

"The total cost of the citations issued each year."

"The number of citations that were paid, contested, or dismissed each year."

"The number of citations reported to credit bureaus for non-payment."

"The number of vehicles impounded due to unpaid citations."

"How many of these citations were issued to residents located in the Dayton area versus those located outside the Dayton area."

"Any data on the demographic breakdown of individuals cited (e.g., race, ethnicity, gender, income level) to assess the impact of the photo enforcement program on minority groups and low-income individuals."

Dayton has produced nothing in response to these requests beyond reports filed with the Ohio Department of Taxation. *Complaint*, pp. 7-8, 12; *Requester's Evidence*, p. 7; *Produced Records*, pp. 44-54.

{¶15} The contracts between Dayton and its vendor provide some evidence that additional records responsive to the first two requests exist. The contracts require the vendor to provide Dayton with weekly summaries of the revenue generated, , monthly invoices of the amount of that revenue due it, and annual audits of the revenue the program generated. *Produced Records*, pp. 6, 15. I therefore recommend that the court order Dayton to retrieve and produce all other records Dayton or its vendor have that are responsive to these requests or to certify that no additional records exist.

{¶16} I do not however recommend that Dayton be required to take any further action regarding the other requests in this category. They seek information apart from records and are therefore unenforceable. *Mantell v. Cuyahoga Cty. Prosecutor's Office*, 2023-Ohio-2768, ¶¶ 12-14, adopted, 2023-Ohio-3619 (Ct. of Cl.).

### 3. Signage related records.

{¶17} This category contains these requests:

"Any documents or communications related to compliance with state laws governing signage and the use of photo enforcement cameras."

"Documentation showing the placement of signage indicating the presence of photo enforcement cameras, including maps or reports verifying compliance with Ohio state laws on photo enforcement signage."

"Any records documenting reviews or audits of signage compliance conducted by the city or a third party."

{¶18} Dayton responded by producing one page of what appears to be an 18-page report and a number of photographs of signs. *Complaint*, p. 8; *Requester's Evidence*, p. 8; *Produced Records*, pp. 31-43.

{¶19} Once again, the vendor contract is some evidence that additional responsive records exist. As discussed in connection with the decisional records, the scope of the vendor's operational and reporting responsibilities and the length of time that it was subject to those responsibilities is some evidence that additional responsive records exist. Further, the fact that the page of the report Dayton produced is paginated as "1/18" is evidence that additional pages of that report exist. I therefore recommend that the court order Dayton to retrieve and produce all other records Dayton or its vendor have that are responsive to these requests or to certify that no additional records exist.

### 4. Records related to penalties avoided.

{¶20} Ms. Wysong also requested any "reports or studies discussing penalties avoided by the City of Dayton due to the strategic relocation of these cameras." *Requester's Evidence*, p. 5. Dayton produced no records responsive to this request. The vendor contracts do not speak to this topic and there is no other evidence that responsive records exist. I therefore recommend that Dayton not be required to take further action regarding this request.

### 5. Contracts and related records.

{¶21} Ms. Wysong requested:

"The contract(s) between the City of Dayton and any third-party vendor(s) responsible for managing and operating the photo enforcement system, including any amendments or revisions."

"Any documents outlining the terms of revenue-sharing agreements between the City of Dayton and the vendor(s), if applicable."

{¶22} Dayton produced part of the original contract with its vendor and series of modifications extending the term of that original contract. *Requester's Evidence*, pp. 11-12; *Produced Records*, pp. 3-26.

{¶23} The original contract is some evidence that additional responsive records exist. The body of the original contract indicates that it included exhibits A and B, but those were not produced. And as discussed in connection with the finance-related requests, the original contract also required the vendor to periodically provide Dayton with various revenue related summaries, invoices and audits. Those materials have not been produced. I therefore recommend that Dayton be required to produce all other records responsive to these requests.

### 6.  Safety and accident data.

{¶24} The request seeks "[a]ccident, injury, and fatality data for the areas where photo enforcement cameras are installed, broken down by year, both before and after the cameras were installed." *Requester's Evidence*, p. 7. It seeks information apart from records and hence is not enforceable. *Mantell,* 2023-Ohio-2768, ¶¶ 12-14. I therefore recommend that Dayton not be required to take further action on this request.

### 7.  Camera replacement and relocation records.

{¶25} These requests sought:

"Documents detailing the criteria used for the placement of photo enforcement cameras in specific locations."

"Any records indicating the relocation of photo enforcement cameras between 2016 and 2024, including the justification for such relocations." *Requester's Evidence*, p. 7.

{¶26} As discussed in connection with the request for decisional records, the vendor contracts are some evidence that additional records responsive to this request exist. I therefore recommend that the court order Dayton to retrieve and produce all other records Dayton or its vendor have that are responsive to these requests or to certify that no additional records exist.

### 8. Due process complaints.

{¶27} This request sought any "internal records or citizen complaints received regarding due process violations in relation to photo enforcement, such as disputes over notice, contesting citations, delays in court hearings, or procedural flaws." *Requester's Evidence*, p. 8. Dayton produced no records in response to this request, but Ms. Wysong has produced no evidence that records responsive to this request exist. I therefore recommend that Dayton not be required to take further action regarding this request.

### B. Respondent unreasonably delayed its production of records.

{¶28} R.C. 149.43(B)(1) mandates that "upon request . . . a public office . . . shall make copies of the requested public record available to the requester . . . within a reasonable period of time." A public office's compliance with that requirement is evaluated based on the facts and circumstances of the request. *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10; *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 16. Several aspects of Dayton's response establish that it violated R.C. 149.43(B)(1)'s timeliness requirement.

{¶29} First, the delay here was longer than delays found unreasonable in other cases. Although each delay claim turns on its own facts, some guidance is provided by other cases. It took more than six months for Dayton to fully respond to Ms. Wysong's requests. Other courts have found far shorter delays unreasonable. *State ex rel. Ware v. Bur. of Sentence Computation,* 2022-Ohio-3562*,* ¶ 17 (10th Dist.); *Jones v. Columbus Div. of Police*, 2025-Ohio-465, ¶ 21 (both surveying cases). While not conclusive, that suggests that Dayton's response time was unreasonable.

{¶30} Second, the request involved a relatively limited number of records and presented no redaction issues. Public offices are given more time to respond to requests

for large volumes of records and less time for requests with fewer responsive records. *State ex rel. Shaughnessy v. City of Cleveland*, 2016-Ohio-8447, ¶ 14; *Kesterson*, 2018-Ohio-5108, ¶ 17; *State ex rel. Patituce & Assocs., LLC v. City of Cleveland*, 2017-Ohio-300, ¶ 7 (8th Dist.); *Easton Telecom Servs., L.L.C. v. Village of Woodmere*, 2019-Ohio-3282, ¶¶ 46-49 (8th Dist.); *State ex rel. Clark-Shawnee Local School Dist. Bd. of Edn. v. City of Springfield*, 2024-Ohio-2483, ¶ 26 (2d Dist.); *State ex rel. Miller v. Ohio Dept. of Edn.*, 2016-Ohio-8534, ¶ 8 (10th Dist.); *Ware*, 2022-Ohio-3562, ¶ 19. Relatedly, more time is allowed if the volume or nature of responsive records make legal review and redaction more time consuming. Compare *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 59 and *Anderson v. Greater Cleveland Regional Transit Auth.*, 2018-Ohio-3653, ¶ 7, adopted, 2018-Ohio-4596 (Ct. of Cl.) with *Miller*, 2016-Ohio-8534, ¶ 8; *State ex rel. Simonsen v. Ohio Dept. of Rehab. & Correction*, 2009-Ohio-442, ¶ 10 (10th Dist.); *State ex rel. Korecky v. City of Cleveland*, 2020-Ohio-273, ¶ 19. The volume of records Dayton produced was not large. Dayton made no redactions. This too suggests that Dayton's response time was unreasonable.

{¶31} Third, the production only occurred after litigation commenced. Courts are more likely to find a delayed production unreasonable if it only occurs after suit was filed. *Miller*, 2016-Ohio-8534, ¶ 8; *Ware*, 2022-Ohio-3562, ¶ 19; *State ex rel. Schumann v. City of Cleveland*, 2020-Ohio-4920, ¶ 9 (8th Dist.); *Staton v. Village of Timberlake*, 2023-Ohio-1860, ¶ 13, adopted 2023-Ohio-2322. That makes sense; it is difficult to justify delays that require requesters on one hand, and the courts and public offices (and the taxpayers who fund both) on the other, to expend time and money on avoidable controversies. That is what we have here.

{¶32} Fourth, Dayton has offered no explanation for its wasteful delay. Other courts have held that is an indicia of undue delay. *Ware*, 2022-Ohio-3562, ¶ 19; *Clark-Shawnee*, 2024-Ohio-2483, ¶ 26.

{¶33} I therefore recommend that the court find that Dayton violated R.C. 149.43(B)(1)'s mandate to timely respond to record requests.

**C. This court cannot grant the other relief requester seeks**.

{¶34} Ms. Wysong asks the court for two other types of relief: damages pursuant to R.C. 149.43(C)(2) and a finding of bad faith, presumably pursuant to R.C. 149.43(C)(3)(iii). Neither type of relief is available in a case brought under R.C. 2743.75, but instead are only available in mandamus cases.  *See* R.C. 149.43(C)(2) and (3).

**D. Requester is entitled to recover her filing fee and costs; respondent should bear the balance of the costs**.

{¶35} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office *** the amount of the filing fee *** and any other costs associated with the action[.]" Ms. Wysong was aggrieved because Dayton violated R.C. 149.43(B) by failing to timely produce records. I therefore recommend that she recover her filing fee and the costs she incurred in this case. I also recommend that Dayton bear the balance of the costs of this case.

## III.    Conclusion.

{¶36} In light of the foregoing, I recommend the court:

A. Order respondent to retrieve and produce, on a request by request basis, all records responsive to the requests reproduced in the appendix to this report or to certify, on a request by request basis, that no responsive records exist.

B. Order respondent to take those actions within 30 days of the entry of a judgment regarding this report and recommendation.

C. Order respondent to certify its performance of those actions within 40 days of the entry of a judgment regarding this report and recommendation.

D. Find that respondent violated R.C. 149.43(B)(1)'s mandate that records be produced within a reasonable period of time,

E. Order that requester recover her filing fee and costs from respondent.

F. Order respondent to pay the balance of the costs of this case, and;

G.  Deny all other relief.

{¶37} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
TODD MARTI
Special Master

**Filed April 30, 2025**
**Sent to S.C. Reporter 5/8/25**

**Appendix of Outstanding Records Requests**

"Any documents, reports, or studies regarding the decision-making process-for relocating photo-enforcement cameras from high accident areas to high traffic areas-between 2016~2024"

"Any emails, memos, or other forms of communication between City of Dayton officials and the photo enforcement vendor(s) regarding signage compliance, public complaints, or revenue expectations."

Communications related to any changes in signage for photo enforcement areas, including discussions about compliance with Ohio State law on signage requirements."

"Any financial reports *or* documents indicating the revenue generated from photo enforcement cameras in these areas, including projections or discussions on revenue generation as a factor in their relocation."

"Annual financial reports detailing the total revenue generated by the photo enforcement program for each year from 2016 to 2024, broken down by location and camera."

"Any documents or communications related to compliance with state laws governing signage and the use of photo enforcement cameras."

"Documentation showing the placement of signage indicating the presence of photo enforcement cameras, including maps or reports verifying compliance with Ohio state laws on photo enforcement signage."

"Any records documenting reviews or audits of signage compliance conducted by the city or a third party."

"The contract(s) between the City of Dayton and any third-party vendor(s) responsible for managing and operating the photo enforcement system, including any amendments or revisions."

"Any documents outlining the terms of revenue-sharing agreements between the City of Dayton and the vendor(s), if applicable."

"Documents detailing the criteria used for the placement of photo enforcement cameras in specific locations."

"Any records indicating the relocation of photo enforcement cameras between 2016 and 2024, including the justification for such relocations."