[Cite as *White v. Ross Corr. Inst.*, 2025-Ohio-2884.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| DONNA M. WHITE | Case No. 2025-00474PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| ROSS CORRECTIONAL INSTITUTION (RCI)/ OHIO DEPARTMENT OF CORRECTIONS | |
| Respondent | |

{¶1} This case is before me for a R.C. 2743.75(F) report and recommendation. I recommend that the court (1) deny respondent's motion to dismiss; (2) order respondent to take the actions listed in the appendix to this report and recommendation within 30 days of the entry of a judgment adopting this report and recommendation; (3) order respondent to file and serve an affirmation that it took those actions within 40 days of the entry of a judgment on this report and recommendation; (4) find that respondent unreasonably delayed its response to the public records requests underlying this case; (5) order respondent to pay requester's filing fee, her costs, and the balance of the costs of this case; and (6) deny all other relief.

## I. Background.

{¶2} Requester Donna White's son died while he was in the custody of the respondent Ohio Department of Rehabilitation and Correction ("ODRC"). He was found to be non-responsive around 12:00 a.m. on July 23, 2024. ODRC staff called for an ambulance to take him to a local hospital, and administered Narcan and CPR during the approximately 25 minutes that elapsed before the ambulance arrived. The EMTs and medical professionals at the hospital made continued efforts to revive him, but he was pronounced dead at 12:56 a.m. PQ Miscellaneous, *Respondent's Material provided to*

*Requester*, filed June 16, 2025 ("*Redacted Records*"), pp. 5-18; *Respondent Ross Correctional Institution (RCI)/Ohio Department of Rehabilitation and Correction's Supplemental Unredacted Material*, filed July 11, 2025 ("*In Camera Records*"), pp. 8-10, 13, 17.

{¶3} Ms. White made multiple public records requests to ODRC for recordings of activities in the prison where he was housed, copies of her son's medical records, and for information about ODRC staff and other inmates who interacted with her son. Those requests were made in October of 2024 and reiterated in April of 2025. ODRC produced some records in January, March, and April of 2025, but did not complete its response until mid-July of 2025. ODRC redacted some of those records and withheld others based on asserted exemptions from the Public Records Act. *PQ Miscellaneous, Respondent's presentation of evidence*, filed June 16, 2025 ("*Respondent's Evidence*"), pp. 3-46; *Order*, entered July 8, 2025.

{¶4} Ms. White filed this case on May 12, 2025. Mediation was bypassed because of how long her requests had been pending and a schedule was set for filing records for in camera review and for the parties to file evidence and memoranda supporting their positions. That schedule, as modified, has run its course, making this case ripe for decision. *Complaint*, filed May 12, 2025; *Order Bypassing Mediation*, entered May 16, 2025; *Order,* entered June 3, 2025; *Order,* entered July 8, 2025.

## II. Analysis.

{¶5} Ms. White's complaint alleges that ODRC improperly denied some of her records requests, that its responses to other requests were deficient in various ways, that it failed to provide legal bases for its denials, and that ODRC unreasonably delayed its response to her requests.

{¶6} ODRC has not meaningfully addressed those allegations. It instead offers the procedural defense that Ms. White's complaint should be dismissed due to her supposed failure to comply with R.C. 149.43(C)(2) and largely unexplained evidentiary submissions. *Respondent Ross Correctional Institution (RCI)/Ohio Department of Rehabilitation and Correction's Motion to Dismiss*, filed June 26, 2025 ("*MTD*"); *Respondent Ross Correctional Institution (RCI)/Ohio Department of Rehabilitation and Correction's Presentation of Evidence*, filed June 16, 2025 ("*Respondent's Evidence*").

**A. The court should deny respondent's motion to dismiss because requester has complied with R.C. 149.43(C)(2).**

{¶7} R.C. 149.43(C)(1) requires a party contemplating suit under the Public Records Act to serve the public office with a complaint form outlining the violation(s) it asserts. It also requires the party to wait at least three business days before filing suit. That requirement is enforced by R.C. 149.43(C)(2):

> Upon filing a complaint or mandamus action . . . a person allegedly aggrieved shall file with the court, in conjunction with the person's complaint or petition, a written affirmation stating that the person properly transmitted a complaint to the public office or person responsible for public records, the failure alleged in the complaint has not been cured or otherwise resolved to the person's satisfaction, and that the complaint was transmitted to the public office or person responsible for public records at least three business days before the filing of the suit. If the person fails to file an affirmation pursuant to this division, the suit shall be dismissed.

{¶8} Ms. White attempted to comply with R.C. 149.43(C)(2) by including the following language in her R.C. 2743.75 complaint:

> I affirm that a copy of this complaint was properly transmitted to the public office or person responsible for public records, that they were provided three business days to cure or otherwise address the failure alleged in this complaint, and that the failure alleged in the complaint has not been cured or otherwise resolved. *Complaint*, p. 1.[1]

{¶9} ODRC does not dispute Ms. White's compliance with R.C. 149.43(C)(1) requirements, but seeks dismissal because, in its view, she has failed to comply with R.C. 149.43(C)(2) in two respects. It first contends that she has not made a proper "affirmation" because her affirmation was not made under oath. It also contends that her affirmation was procedurally deficient because it was made in her complaint, rather than in a separate filing.

{¶10} The argument that Ms. White's affirmation was deficient because it was not made under oath ignores R.C. 3.20. That statute unambiguously states that "[a]n affirmation has the same effect as an oath."

{¶11} The argument that Ms. White's affirmation doesn't count because it was not made in a separate pleading also ignores statutory text. R.C. 149.43(C)(2) requires that

---

[1] All references to specific pages of the *Complaint* are to the pages of the PDF copy posted on the court's docket.

the affirmation be made "in conjunction with . . . the complaint or petition." The phrase "in conjunction with" is commonly understood to mean "together with" or "done . . . together." *Merriam-Webster Dictionary*; *Collins Dictionary*;[2] *Collins Dictionary*.[3] The courts give the phrase a similar meaning. *Young v. Young*, 106 Ohio App. 206, 209 (12th Dist.1958) ("the state of being joined together," "combination"). Including the R.C. 149.43(C)(2) affirmation in the complaint is placing them "together," a "joining" and a "combination" of the affirmation and complaint and hence their being "in conjunction with" each other.

{¶12} Finally, Supreme Court's precedent counsels against ODRC's construction of R.C. 149.43(C)(2). The Court "construe[s] R.C. 149.43 *liberally* in favor of broad access, with any doubt resolved in favor of disclosure of public records." *State ex rel. Morgan v. City of New Lexington*, 2006-Ohio-6365, ¶ 28 (emphasis added). That cuts against ODRC's strained construction. Further, that construction would needlessly complicate cases brought under R.C. 2743.75, a statute intended to provide a process for those not schooled in law. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 12.

{¶13} I therefore recommend that the court DENY respondent's motion to dismiss.

## B. Requester's production claim should be granted in part.

{¶14} A person seeking to compel production of public records through R.C. 2743.75 must "plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Welsh-Huggins*, 2020-Ohio-5371, ¶ 33.

{¶15} The attachments to Ms. White's complaint, which are part of that pleading, show that she sought several categories of records/information from ODRC:

- Video tapes of various incidents that occurred between July 7 and 22, 2024, in the prison where her son was housed recorded by stationary cameras.

---

[2] https://www.merriam-webster.com/dictionary/in%20conjunction%20with  Accessed July 21, 2025.

[3] https://www.collinsdictionary.com/us/dictionary/english/in-conjunction-with#google_vignette Accessed July 21, 2025.

- Videotapes of those events recorded from cameras worn by ODRC personnel.

- Her son's medical records.

- Photographs of her son after his death and the areas where his body was located.

- Information about inmates and ODRC employees who interacted with her son. *Complaint,* pp. 25, 26, 28, 32, 33.

{¶16} ODRC has not denied the complaint's allegations that Ms. White made those requests, establishing the first element of her production claim. Civ. R. 8(D); *Myers v. Paint Twp*., 2024-Ohio-4784, ¶¶ 6-8, 10, 12, adopted October 21, 2014 (Ct. of Cl. Case No. 2024-00426PQ). The question therefore becomes whether ODRC denied her access to public records responsive to those requests.

**1. Videos of incidents between July 7 and 23, 2024, shot from stationary cameras.**

{¶17} Ms. White requested copies of all videos that captured certain events related to her son occurring between July 7 and 23, 2024. I take these requests to seek video from stationary cameras because, unlike the requests discussed in section II(B)(2) below, they do not mention body worn cameras. *Complaint,* pp. 25, 26, 28, 33.

{¶18} ODRC produced videos from stationary cameras that were recorded during portions of July 10, 13, 18, 22, and 23, 2024. Ms. White contends that additional videos exist and that ODRC should be ordered to produce them. *PQ Miscellaneous*, *Motion to Compel Full and Unredacted Production of Video Records*; *PQ Miscellaneous*, *Notice to Court*; *PQ Miscellaneous*, *Memorandum in Opposition to Motion to Dismiss*; all filed July 14. 2025.[4]

{¶19} If there is sufficient evidence that a public office has failed to produce all responsive public records the office must either produce the remaining records or certify that none exist. *State ex rel. Sultaana v. Mansfield Corr. Inst*., 2023-Ohio-1177, ¶¶ 37-43, 50; *State ex rel. Harris v. Pureval*, 2018-Ohio-4718, ¶¶ 15, 18. The sufficiency of evidence

---

[4] I read these submissions together as a combined response to ODRC's *Motion to Dismiss*. To the extent that they are considered to be motions, I recommend that they be DENIED as moot in light of the substance of this report and recommendation.

to trigger that obligation varies depending on the office's response. Clear and convincing evidence is required if the office provided sworn evidence that no additional records exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶¶ 22-26. However, "some evidence" is sufficient if the office does not provide sworn evidence negating the existence of additional responsive records. *Sultaana*, 2023-Ohio-1177, ¶¶ 37-43.

{¶20} Although ODRC's affidavit testimony did not address any videos other than those recorded from body worn cameras, its evidentiary submission included an email denying the existence of additional videos shot from stationary cameras. *Respondent's Evidence*, pp. 42, 108-109. That email is not sworn evidence.

{¶21} Ms. White was therefore only required to come forward with some evidence that additional videos shot from stationary cameras exist. She has not done so. I therefore recommend that ODRC not be required to produce additional videos shot from stationary cameras.

## 2. Video from body worn cameras.

{¶22} Ms. White also requested recordings made from body worn cameras between July 7 and 23, 2024. *Complaint,* pp. 25, 26, 28, 33. ODRC produced three recordings from body worn cameras, all recorded on July 23, 2024. *In Camera Records;* S:\PUBLIC RECORDS REQUEST\Secure\2025-00474\Playable BWC\Redacted BWC Video.

{¶23} Ms. White's memoranda challenge the sufficiency of that production in two respects. She asserts that ODRC has not produced all responsive recordings and challenges the redactions to the recordings that were produced.

### a. The existence of additional videos.

{¶24} As discussed in connection with the videos from stationary cameras, a requester claiming that a public office has not produced all responsive records has the burden of proving that additional responsive records exist. The requester must prove that fact by clear and convincing evidence if the office provided sworn evidence that it produced all responsive records, but need only provide "some evidence" if the office has not provided sworn evidence. "Some evidence exists if . . . other records refer to or

otherwise suggest the existence of the additional records." *Sell v. Trumbull Cty. Juv. Div.*, 2024-Ohio-6139, ¶ 6 (Ct. of Cl.).

{¶25} ODRC has not provided sworn evidence that it has provided all the videos recorded from body worn cameras. Although its inhouse counsel attested that staff at the prison identified three videos that were responsive to "a" request Ms. White made, that affidavit does not state that those are the only videos responsive to that single request. Further, the affidavit did not address whether videos responsive Ms. White's other requests for video from body worn camera exist. *Respondent's Evidence*, p. 108, ¶ 6. ODRC is consequently required to either produce additional videos, or certify that none exist, if there is some evidence that additional responsive videos exist.

{¶26} There is some evidence that additional videos exist. ODRC produced recordings of the events of July 23, 2024 made from three employees' body worn cameras. Those recordings show more than three employees were wearing body cameras. Further, the recordings from the stationary cameras discussed above show multiple ODRC employees wearing body cameras. That is some evidence that additional recordings made from body worn cameras exist.

**b. Redactions**.

{¶27} The three body worn videos that were produced contained redactions. ODRC submitted affidavit testimony that the redactions were based on various exceptions from the Public Records Act. It therefore had the burden of proving that the redacted material fit squarely within those exceptions. *Kearns v. Fairfield Police Dept.*, 2025-Ohio-2003, ¶ 5, adopted 2025-Ohio-2373 (Ct. of Cl.). The redactions fell into two categories.

{¶28} *Images of Ms. White's son*. The vast majority of the redactions obscured images of Ms. White's son as ODRC staff tried to resuscitate him. Those redactions are based on R.C. 149.43(A)(1)(jj) and (17)(b). *Respondent's Evidence*, p. 109, ¶ 9.

{¶29} R.C. 149.43(A)(jj) excepts "[r]estricted portions of a body-worn camera" from the class of public records. R.C. 149.43(A)(17)(b) defines that term as including portions of recordings showing the "death of a person or a deceased person's body, unless the death was caused by a correctional employee, youth services employee, or peace officer[.]" The evidence before the court establishes the elements identified in R.C. 149.43(A)(17)(b).

{¶30} These videos showed the "death of a person or a deceased person's body." The time stamps and lengths of the videos indicate that they were recorded between 12:08 a.m. and 12:31 a.m. on July 23, 2024. An ODRC nurse reported that as of 12:01 a.m. he "noted no detectable pulse or respirations" from Ms. White's son. A corrections officer reported that as of 12:03 a.m. Ms. White's son was not responding to touch and other efforts to rouse him. The captain in charge of the scene reported that as of 12:06 a.m. he "could not see a rise and fall of the inmate's chest and no movement." The records generated at the hospital where Ms. White's son was taken reported that the EMTs found him to "be in cardiorespiratory arrest" when they arrived at the prison. Those records also reported that "[u]pon presentation to the emergency department, [the] patient remain[ed] in cardiac arrest" and that "[b]edside cardiac ultrasound showed complete standstill." In camera review of the unredacted videos revealed that Ms. White's son showed no visible signs of life. He was likely dead, or at the least, in the process of dying, when the videos were shot. The videos therefore either recorded either the "a deceased person's body" or the "death of a person." *Redacted Records*, pp. 8, 9, 13; *In Camera Records*, pp. 8-10.

{¶31} There is no evidence that the death was caused by a correctional employee. Nothing suggested a confrontation, violent or otherwise, between Ms. White's son and ODRC staff. Further, the nature of his death, by cardiac arrest, is inconsistent with it being caused by a correctional employee.

{¶32} *The other set of redactions were to images of a computer screen, a note pad, and a flyer*. Those redactions were to the 561,736 KB redacted video ODRC filed. *In Camera Records*, S:\PUBLIC RECORDS REQUEST\Secure\2025-00474\Playable BWC\Redacted BWC Video. ODRC contends that those redactions obscured R.C. 149.433 security records and information protected by R.C. 5120.21(D). Redactions to a video are improper if the "images in the video lack sufficient size and/or clarity to allow one to perceive any information that might be covered by" the exception claimed. *Kearns*, 2025-Ohio-2003, ¶ 11. In camera review of the unredacted video revealed that the images redacted from 2:56-3:11; 6:32-6:59; 13:09-14:01; 21:36-21:44; 22:26-22:30 and 22:56-23:26 of that video are too small and/or unclear to allow one to perceive any information excepted by R.C. 149.433 or R.C. 5120.21(D). ODRC has provided no non-conclusory

extrinsic evidence showing that the redacted images contained information protected information by those statutes. It has therefore failed to prove that these redactions were proper.

### 3. Medical Records.

{¶33} Ms. White requested her son's medical records, but ODRC declined to produce them, asserting that they are exempted from the class of public records by ODRC policy 07-0RD-02. *Respondent's Evidence*, p. 109-110, ¶ 10. That grounds for withholding the records fails as a matter of law because an internal agency policy, not rising to the level of an administrative rule, provides no basis for denying a R.C. 149.43 records request. *Mentch v. Cleveland Hts. Univ. Hts. Library*, 2020-Ohio-5162, ¶ 6, adopted 2020-Ohio-5592 (Ct. of Cl.). Indeed, to hold otherwise would be to allow public offices to exempt themselves from the accountability R.C. 149.43 mandates. That cannot be the law.

{¶34} That being said, the court has discretion to apply obviously applicable exemptions from the Public Records Act that a respondent has overlooked. *State ex rel. Clark v. Toledo*, 62 Ohio St.3d 452, 454 (1992). The medical records exception set out in R.C. 149.43(A)(1)(a) and (3) is obviously applicable to most of these records. Together, those statues exempt "[a]ny document or combination of documents . . . that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment." It is "obviously apparent and manifest just from the content of the record[s]" at issue that most of those records fit within this exemption. *Welsh-Huggins*, 2020-Ohio-5371, ¶ 35; *In Camera Records*, pp. 3, 25-233.

{¶35} That is not true of all the withheld records, however. Records only fit within R.C. 149.43(A)(3) if they were "generated and maintained in the process of medical treatment." Ms. White's son died, at the very latest, at 12:56 a.m. on July 23. 2024. *Id*. at p. 9. A significant number of the withheld records were only created *after* that time. *Id*. at pp. 4-22, 25. They consequently were not generated in the process of medical treatment because the treatment process had ended before they were generated. See, *State ex rel. Ware v. City of Cleveland*, 55 Ohio App.3d 75, 77, (8th Dist.1989). ("The report was not maintained or generated in the process of medical treatment. Samuel Ware received no medical treatment because he was found dead at the scene.")

{¶36} I therefore recommend that the court order respondent to produce pp. 4-22 and 25 of the *In Camera Records.*

### 4. Photographs of respondent's son after his death and the areas where his body was located.

{¶37} "In general, the provision of requested records to a [requester] in a public-records *** case renders the *** claim moot." *State ex rel. Cincinnati Enquirer v. Dupuis,* 2002-Ohio-7041, ¶ 8. A public records claim can be mooted by the respondent producing the responsive records during the course of the litigation. *State ex rel. Striker v. Smith*, 2011-Ohio-2878, ¶¶ 17-18, 22.

{¶38} ODRC produced photographs that appear to be responsive to this request during the course of this case. *Respondent's Evidence*, pp 64-107. Ms. White has not challenged the sufficiency of this production. I therefore recommend that the court find that this portion of her requests is moot.

### 5. Information about various inmates and ODRC staffers who interacted with requester's son.

{¶39} "R.C. 149.43(B)(1) codifies a right to records that capture information, but not to information apart from records." *Law Office of Josh Brown LLC v. Ohio Secy. of State*, 2023-Ohio-4438, ¶ 14, adopted 2024-Ohio-819 (Ct. of Cl.). Ms. White sought information about inmates and ODRC staff who interacted with her son, apart from records that contained that information. *Complaint*, pp. 25, 26, 28. Those requests are not enforceable under R.C. 149.43. I therefore recommend that the court deny relief on those requests.

***

{¶40} In sum, I recommend that the court resolve requester's production claims by ordering:

1. ODRC to (a) produce the body worn camera recordings from the employees present during the events occurring between July 7 and 23, 2024 described in Ms. White's requests that have not already been produced and to (b) make an affirmation that no other recordings of those events shot from body worn cameras exist.

2. That any additional recordings produced be redacted to obscure materials covered by R.C. 149.43(A)(1)(jj), R.C. 149.433, R.C. 5120.21, or that implicate third parties' statutory privacy rights.

3. ODRC to reproduce the 561,736 KB redacted video without the redactions made from 2:56-3:11; 6:32-6:59; 13:09-14:01; 21:36-21:44; 22:26-22:30, and 22:56-23:26 of that video.

4. ODRC to produce pp. 4-22 and 25 of the *In Camera Records.*

## C. Respondent did not violate R.C. 149.43(B)(3).

{¶41} Ms. White's claim that ODRC did not provide adequate explanations of the legal bases for its withholding and redactions implicates R.C. 149.43(B)(3). That statute requires a public office denying all or part of a records request to explain the legal bases for its denials, but it does not set a deadline for doing so. A public office can meet that requirement by its filings in a case brought to enforce the requests. *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 16; *State ex rel. Ware v. Giavasis*, 2020-Ohio-3700, ¶¶ 2-3, 11-12. ODRC did that here. *Respondent's Evidence*, pp. 109-110, ¶¶ 9, 10. I therefore recommend that the court deny relief on this claim.

## D. Respondent unreasonably delayed its response to requester's requests.

{¶42} R.C. 149.43(B)(1) mandates that "upon request *** a public office *** shall make copies of the requested public record available to the requester *** *within a reasonable period of time*." (Emphasis added). A public office's compliance with that requirement is evaluated based on the facts and circumstances of the request. *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10; *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 16. Several factors indicate that ODRC unreasonably delayed its response to Ms. White's requests.

{¶43} First, the delay here is longer than delays found unreasonable in other cases. Although each delay claim turns on its own facts, some guidance is provided by similar cases. Ms. White's requests were first made nine months ago, in October of 2024. ODRC has yet to fully respond to those requests, as previously discussed. That is longer than the delays found to be unreasonable in other cases. See *State ex rel. Ware v. Bur. of Sentence Computation*, 2022-Ohio-3562, ¶ 17 (10th Dist.); *Jones v. Columbus Div. of Police*, 2025-Ohio-465, ¶ 21 (10th Dist.) (both surveying cases). While not conclusive, that suggests that the delay here was unreasonable.

{¶44} Second, most of the productions only occurred after litigation commenced. Courts are more likely to find delayed production unreasonable if it occurs after commencement of litigation. *Ware*, 2022-Ohio-3562, ¶ 19; *State ex rel. Schumann v. City of Cleveland*, 2020-Ohio-4920, ¶ 9 (8th Dist.). That makes sense; it is difficult to justify a delay that requires the requester, the courts, and the public office (and the taxpayers who fund them), to expend time and money on an avoidable controversy. That is what we have here.

{¶45} Fourth, ODRC has offered no explanation for that wasteful delay. Other courts have held that is an indicia of undue delay. *Ware*, 2022-Ohio-3562, ¶ 19; *State ex rel. Clark-Shawnee Local School Dist. Bd. of Edn. v. City of Springfield*, 2024-Ohio-2483, ¶ 26 (2d Dist.). Ms. White first requested the videos at issue in October of 2024. ODRC's evidence indicates that prison staff did not get around to identifying responsive videos until April of 2025. *Respondent's Evidence*, p. 108, ¶ 6. ODRC offers no explanation for that months long delay. That strongly supports a finding of unreasonable delay.

{¶46} I therefore recommend that the court find that ODRC violated R.C. 149.43(B)(1) by unreasonably delaying its response to Ms. White's requests.

### D. Requester is entitled to recover her filing fee and costs; respondent should bear the balance of the costs.

{¶47} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office *** the amount of the filing fee *** and any other costs associated with the action[.]" Ms. White was aggrieved by ODRC's failure to produce the records discussed above and by its delay in responding to her requests. I therefore recommend that she recover her filing fee and the costs she incurred in this case. I also recommend that ODRC bear the balance of the costs of this case.

## III. Conclusion.

{¶48} In light of the foregoing, I recommend the court:

A. Deny respondent's motion to dismiss.

B.  Order respondent to take the actions listed in the appendix to this report and recommendation within 30 days of the entry of a judgment adopting this report and recommendation.

C.  Order respondent to file and serve an affirmation that it took those actions within 40 days of the entry of a judgment on this report and recommendation.

D.  Find that respondent unreasonably delayed its response to the public records requests underlying this case.

E.  Order respondent to pay requester's filing fee, her costs, and the balance of the costs of this case.

F.  Deny all other relief.

{¶49} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD MARTI
Special Master

## Appendix

## Actions to be taken by respondent

1.  Produce the body worn camera recordings from the employees present during the events between July 7 and 23, 2024 described in Ms. White's requests that have not been previously produced and make an affirmation that no other recordings of those events made from body worn cameras exist.

2.  Redact any additional recordings produced to obscure materials covered by R.C. 149.43(A)(1)(jj), R.C. 149.433, R.C. 5120.21, or that implicate third parties' statutory privacy rights.

3.  Reproduce the 561,736 KB redacted video without the redactions made from 2:56-3:11; 6:32-6:59; 13:09-14:01; 21:36-21:44; 22:26-22:30 and 22:56-23:26 of that video.

**Filed July 22, 2025**
**Sent to S.C. Reporter 8/14/25**